# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THICCC BOY PRODUCTIONS, INC., | : | Case No. 1:22-cv-00090-MSM-PAS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **DEFENDANT'S MOTION** |
| KYLE SWINDELLES, *et al*., | : | **FOR SUMMARY JUDGMENT** |
| | : | **PURSUANT TO** |
| Defendants. | : | **FED. R. CIV. P. 56** |

Now comes Defendant Kyle Swindelles, *pro se*, and hereby moves this Court for summary judgment in accordance with Federal R. Civ. P. 56. In accordance with LR Cv 56, a separate Statement of Undisputed Facts will be filed with the Court.

Respectfully submitted,

*Kyle Swindelles*

Kyle Swindelles, Defendant, *pro se*
41 Marietta Street, 2nd Floor, Unit 4
Providence, Rhode Island 02904
Phone: (401) 230-5061
e-mail: yewneekent@gmail.com

1

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### I.    STATEMENT OF FACTS

Plaintiff Thiccc Boy Productions, Inc., is a Colorado corporation producing audio and video content for commercial purposes. *Statement of Undisputed Facts* at 1. Plaintiff produces "The Fighter and the Kid" ("TFATK") podcast. *Statement* at 3. In February of 2022, amid public allegations of personal misconduct, Plaintiff's principal executive threatened that he was "going after anyone who harasses me online, including comics." He vowed to deploy "monster lawyers" and "friends in dark places" who were "gonna get the job done." https://youtu.be/QWfrsT9c8II at 0:31:59. On February 15 and 16, 2022, Plaintiff filed YouTube Digital Millennium Copyright Act ("DMCA") take down notices against Defendant Kyle Swindelles' online videos discussing TFATK and Thiccc Boy Productions executives. *Statement* at 7. On February 22, 2022, Plaintiff registered the copyrights of four video podcasts it posted on YouTube the previous year between September 7, 2021, and October 25, 2021. *Statement* at 10. Plaintiff's "monster lawyers" initiated the current action alleging copyright infringement on February 28, 2022.

Defendant Kyle Swindelles is an online content creator based in Rhode Island with a relatively small online following. *Statement* at 1, 6. His audio and video content typically depicts him discussing and giving opinions on gaming, comedy, radio, podcasts and other forms of popular entertainment. *Statement* at 6. His short YouTube videos do not typically amass more than 100,000 online views, whereas individual TFATK episode views can number in the multi-millions. *Statement* at 5, 16. Swindelles would often discuss the TFATK podcast and its on-air personalities in his short videos. He would give updates on the podcast and was often critical that the podcast or its personalities were not

2

funny or were engaging in bad behavior. *Statement* at 14, 15. To illustrate his points, he would show short clips of TFATK and comment on them. His videos ran in the four-to-eight-minute range and were about half video of Swindelles talking, and half TFATK clips. *Statement* at 13, 14. Swindelles lost access to his YouTube channel after Plaintiff filed its DMCA takedown notices. *Statement* at 9.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the movant carries its burden by "show[ing] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are "facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant produces such facts, the nonmoving party must go "beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party cannot defeat summary judgment by presenting evidence so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Most pertinent to the current action, however, is that Federal Courts across the United States are constantly dismissing copyright infringement claims just like this one prior to trial on fair use considerations. *See Monsarrat v. Newman*, 28 F.4th 314 (1st Cir. 2022); *Boesen v. United Sports Publ'ns. Ltd.*, 2020 U.S. Dist. LEXIS 240935 (E.D.N.Y. Dec 22, 2020); *Castle v. Kingsport Publ'g Corp.*, 2020 U.S. Dist. LEXIS 233919 (E.D. Tenn. Dec. 14, 2020); *Fellner v. Travel 4 All Seasons LLC*, 2020 U.S. Dist. LEXIS 198638 (D. Ariz. Sep. 30, 2020); *Chapman v. Maraj*, 2020 U.S. Dist. LEXIS 198684 (C.D. Cal. Sep. 16,

2020); *Schwartzwald v. Oath Inc.*, 2020 U.S. Dist. LEXIS 165641 (S.D.N.Y. Sep. 10, 2020); *Bain v. Film Indep., Inc.*, 2020 U.S. Dist. LEXIS 141859 (C.D. Cal. Aug. 6, 2020); *Marano v. Metro. Museum of Art*, 2020 U.S. Dist. LEXIS 122515 (S.D.N.Y. July 13, 2020); *Bell v. Worthington City Sch. Dist.*, 2020 U.S. Dist. LEXIS 96424 (S.D. Ohio June 2, 2020); *et al* (numerous cases omitted for brevity).

### III.  ARGUMENT

#### A. Defendant's Videos Constitute Fair Use

The Copyright Act states: [F]air use of a copyrighted work … for purposes such as ***criticism* [or] *comment*** … is not an infringement of copyright." 17 U.S.C. § 107 (emphasis added). Section 107 sets forth four factors courts should use to determine the question of fair use; (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The factors are non-exclusive and "weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). In the current action, all four factors weigh in favor of Defendant.

#### 1. The First Fair Use Factor Favors Defendant.

The First Circuit Court of Appeals explained the first fair use factor as such:

> Our task under the first prong is to assess "whether and to what extent the new work is 'transformative,'" that is, "whether the new work merely supersedes the objects of the original creation" or whether it "adds something new, with a further purpose or different

4

>character, altering the first with new expression, meaning, or message."

*Monsarrat v. Newman*, 28 F.4th 314, 322 (1st Cir. 2022), [quoting *Society of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59-60 (1st Cir. 2012) *and Campbell*, 510 U.S. at 579)]. The more "transformative" the new work, the less the significance of factors that weigh against fair use, such as use of a commercial nature. *Nuñez v. Caribbean Internat'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000), (quoting *Campbell*, *Id.*).

In the current case, Defendant created works of criticism regarding the TFATK podcast. He commented that the on-air personalities were unfunny or that they engaged in bad behavior. The intention was often for comedic effect. The Supreme Court stated that the standard to determine whether a use constitutes as criticism is if it "reasonably could be perceived as commenting on the original or criticizing it, to some degree." *Campbell*, 510 U.S. at 583. This standard was formulated to avoid subjective value judgments, like whether the use was in good taste. Swindelles may have discussed subjects or expressed opinions that Plaintiff found hurtful or objectionable, but it cannot support the notion that his videos were not "transformative" and distinct from the TFATK episodes.

While Swindelles' use could be considered minimally commercial (YouTube compensates content creators for advertising "click-throughs" from viewers of their videos), it is undisputed that his commentary made the videos an entirely different creation than the TFATK podcast episodes. The 1st Circuit has stated that "commercial gain alone is not dispositive." *Monserrat*, 28 F.4th at 322, *quoting Campbell*, 510 U.S. at 585. Commercial gain only becomes an important factor "the lesser the transformative nature of the work." *Id.*, *quoting Gregory*, 689 F.3d at 60.

The concept of "reaction videos" (where a narrator or host "reacts" to a clip made by another person) as transformative was clarified in the seminal case of *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015). The court found that the reaction videos at issue were "highly transformative" comment and criticism because:

> Equal's Three's episodes directly respond to and highlight humorous aspects of Jukin's videos. The episodes do so via the host's reactions to the videos, jokes, narration, costumes and graphics. The host's narration does not simply recount what is shown in Jukin's videos; instead the host makes comments about Jukin's videos that highlight their ridiculousness by creating fictionalized narratives of how the events transpired, using similies, or by directly mocking the depicted events and people
>
> …
>
> This is not a case where the addition of minimal narration, an introduction, or text did not change the essential character of the original work.

*Id.* at 1104-05.

Here, Defendant was doing something similar with the TFATK episodes. Swindelles directly mocked the TFATK on-air talent for their lack of humor or their antics on and off camera. He gave opinions about them and speculated about other matters. His work was not "minimal narration, an introduction, or text" that "did not change the essential character of the original work." He made his own distinct videos with his own points of view. Plaintiff may not have liked his points of view, spurring its desire for expensive, drawn-out litigation, but it does not constitute a copyright infringement.

### 2. The Second Fair Use Factor Favors Defendant.

The next focus is the "nature of the copyrighted work." 17 U.S.C. § 107(2). This second factor has rarely played a significant role in the determination of a fair use dispute. See William F. Patry, *Patry on Fair Use* § 4.1 (2015). Courts have generally considered two aspects of the work in evaluating its "nature:" (1) the extent to which it is a creative work as opposed to a factual work, and (2) whether it is unpublished. *Nuñez*, 235 F.3d at 23. The scope of fair use is narrower when works "fall closer to creative end of the spectrum than the informational or factual end" and when they have not previously been published. *Monsarrat*, 28 F.4th at 323, quoting *Gregory*, 689 F.3d at 61-62.

While not generally a dispositive factor, it appears TFATK is mostly a creative work where the on-air personalities discuss current events, sports and their own day-to-day goings on. TFATK is published on YouTube and on online podcast platforms. The fact that the work is creative is of "limited usefulness where, as here, the creative work of art is being used for transformative purpose." *Cariou*, 714 F.3d at 710. Nor is this a situation where Defendant usurped "the author's right to control the first public appearance of his expression." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*, 756 F.3d 73, 88 (2nd Cir. 2001). Therefore, this factor favors Defendant, given the highly transformative nature of the videos and the limited weight given this factor.

### 3. The Third Fair Use Factor Favors Defendant.

The third factor is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). However, such an inquiry must be a flexible one, rather than a simple determination of the percentage used. *Nuñez*, 235 F.3d at 24; see *Campbell* 510 U.S. at 588-89 (acknowledging that for a parody to be effective,

it had to take enough material to evoke the original). Even verbatim copying can constitute fair use if it is "consistent with or [no] more than necessary to further the 'purpose and character of the use.'" *Id.* (quoting *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 144 (2nd Cir 1998). The law does not, however, require that the secondary artist may take no more than is necessary. *Cariou v. Prince*, 714 F.3d 694 (2nd Cir. 2013).

This factor favors Defendant by a landslide. Plaintiff claims that Defendant's use of a few minutes of TFATK content taken from over six (6) hours of podcasts is a devastating infringement of its copyright. While there is no legal bright line as to how much use is reasonable, the facts support that for Defendant's purpose to inform and criticize, a few minutes taken from six hours is entirely reasonable. Swindelles engaged in a highly transformative critique of TFATK, and there is no legal question that it was fair use.

### 4.  The Fourth Fair Use Factor Favors Defendant.

The fourth statutory factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[1] Under this factor, the impact to Plaintiff's overall business is irrelevant, and the court should focus only on the effect any copying has on the market for the original work. *Nuñez*, 235 F.3d at 24. The Supreme Court made clear that because a critique "may quite legitimately aim at garroting the original, destroying it commercially as well as artistically, the role of courts

---

[1] Defendant notes that the burden of proof to show market harm lies solely with Plaintiff. *See Adobe Sys. Inc. v. Christenson*. 809 F.3d 1071, 1079 (9th Cir. 2015) ("fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party.") Proof of market harm is within the exclusive knowledge of Plaintiff, therefore, it must bear the burden on this factor.

8

is to distinguish between 'biting criticism that merely suppresses demand and copyright infringement which usurps it.'" *Campbell*, 510 U.S. at 592.

Kyle Swindelles is what anyone would consider a "small fish" in the sea of online media. TFATK is one of the most popular podcasts in the world, amassing twenty-six (26) times as many YouTube subscribers as him. No viewer in the public is going to mistake Swindelles' short critique videos for Plaintiff's hours-long podcasts. TFATK offers a long-form podcast, and Swindelles has made short videos critical of that podcast. They do not exist in the same markets. Plaintiff cannot argue Defendant's use harmed its ability to license its work for critical videos because "the law recognizes no derivative market for critical works." *Campbell*, 510 U.S. at 592. Also, the fact that a critique "may impair the market for derivative uses by the very effectiveness of its critical commentary is no more relevant under copyright than the like threat to the original market." *Id.* at 593. The Supreme Court explained:

> This distinction between potentially remediable displacement and unremediable disparagement is reflected in the rule that there is no protectible derivative market for criticism. The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop. Yet the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market.

*Campbell*, 510 U.S. at 592. If any effect Swindelles' critical videos had on Plaintiff's overall business is irrelevant and Plaintiff cannot claim to have lost the ability to license similar critical videos, how can it prevail in any way? The answer is it cannot, which is why summary judgment is appropriate in this case.

9

## PLAINTIFF'S CONCURRENT MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD FAIL

Plaintiff currently has an opposing motion for partial summary judgment pending before the Court. In this motion, Plaintiff claims that because defendant did not respond to its requests for admissions, it should win all dispositive claims without actually having to support any of them.[2] This would lead to a ridiculous result and is not a serious use of the discovery process.

First and most importantly, under Fed. R. Civ. P. 36(a)(3), the court has the authority to order a longer period for a party to respond to a request for admissions. Defendant believed in good faith that when he sent his Motion for Sanctions to Plaintiff's counsel after receiving the request for admissions, he had responded. Because the Motion for Sanctions sought dismissal of the case, he thought the matter would take precedence over discovery since it could make all discovery moot if granted. The court should interpret a *pro se* litigant's actions and filings "liberally," and this is a circumstance where an injustice would occur should the action be decided on "gotcha" discovery tactics. *See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.,* 209 F.3d 18, 23 (1st Cir. 2000).

Secondly, Plaintiff has requested admissions that fall outside the scope of discovery. Fed R. Civ. P. 36(a)(1) limits the scope of requests for admissions to matters included in the general scope of discovery under Fed. R. Civ. P. 26(b)(1). This rule allows for discovery of nonprivileged matters considering "the parties relative access to

---

[2] Plaintiff also included an irrelevant narrative about a snippet of Defendant's podcast, extracting a portion of a dumb joke out of context and trying to represent it to the Court as hateful conduct. For a party arguing that it did not file this action to harass and attack the Defendant, such conduct is proving otherwise.

10

relevant information." In its request, Plaintiff sought an admission from *pro se* podcaster Kyle Swindelles that "his infringing derivative works harm the market for the [Plaintiff's] original works by serving as a market replacement." Swindelles does not have access to information regarding the market for Plaintiff's works or their market replacements. In fact, such information would be exclusive to Plaintiff. Courts have noted that "fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party." *Christenson*, 809 F.3d at 1079. Just because Defendant raised an affirmative defense does not mean that Plaintiff need not prove its own case. While Plaintiff's desire to avoid addressing the merits of its own claims is understandable, it cannot rely on technical gymnastics to prove claims that only Plaintiff itself can address.

In the end, Plaintiff wishes to make its entire case on the assumed technical legal opinions of a *pro se* defendant with no prior experience with this area of law (and obtained solely by omission). Well, what if the ghost of Kyle Swindelles who did not respond to the admissions is wrong on the law? Plaintiff may next send Defendant a request for admissions stating "I caused Plaintiff a million billion gazillion dollars in damages," and if he does not timely respond, will then petition the court for a judgment of a million billion gazillion dollars. That is not how this works. A party needs to prove its case, and if it knows it cannot, it needs to show some ethics and withdraw the action. For these reasons, Plaintiff's Motion for Partial Summary Judgment should fail.

## CONCLUSION

This case presents no genuine issues of material fact for the court or a jury to decide, and summary judgment for defendant is a common way for this type of case to

11

end. The goals of this action have been achieved: Defendant has been thoroughly harassed, hours have been billed, and Defendant's criticism via his YouTube page has been shut down for an extended period. Defendant's use of the works was fair use. For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment for Defendant Kyle Swindelles.

Respectfully submitted,

*Kyle Swindelles*

Kyle Swindelles, Defendant, *pro se*
41 Marietta Street, 2nd Floor, Unit 4
Providence, Rhode Island 02904
Phone: (401) 230-5061
e-mail: yewneekent@gmail.com

**CERTIFICATE OF SERVICE**

This is to certify that on ___Oct 31___, 2022, I electronically transmitted the foregoing *Defendant's Motion for Summary Judgment* and associated *Statement of Undisputed Facts* to the below interested parties at the e-mail addresses provided to the Court.

Robert E. Allen, Esq.        rallen@glaserweil.com
Thomas P. Burke, Jr., Esq.   tburke@glaserweil.com
Travis J. McDermott, Esq.    tmcdermott@psh.com