# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THICCC BOY PRODUCTIONS, INC., | : | Case No. 1:22-cv-00090-MSM-PAS |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **DEFENDANT'S MOTION** |
| KYLE SWINDELLES, *et al.*, | : | **FOR SUMMARY JUDGMENT** |
| | : | **PURSUANT TO** |
| Defendants. | : | **FED. R. CIV. P. 56** |

Now comes Defendant Kyle Swindelles, *pro se*, and hereby moves this Court for summary judgment in accordance with Federal R. Civ. P. 56. In accordance with LR Cv 56, a separate Statement of Undisputed Facts will be filed with the Court.

Respectfully submitted,

*Kyle Swindelles*

Kyle Swindelles, Defendant, *pro se*
41 Marietta Street, 2nd Floor, Unit 4
Providence, Rhode Island 02904
Phone: (401) 230-5061
e-mail: yewneekent@gmail.com

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    STATEMENT OF FACTS

Plaintiff Thiccc Boy Productions, Inc., is a Colorado corporation. *Statement of Undisputed Facts* at 1. Plaintiff claims copyright to "The Fighter and the Kid" ("TFATK") podcast. *Statement* at 3. Plaintiff uploads audiovisual versions of TFATK to YouTube, an online video streaming service. *Statement* at 4. On February 15 and 16, 2022, Plaintiff filed YouTube Digital Millennium Copyright Act ("DMCA") take down notices against Defendant Kyle Swindelles' YouTube videos. *Statement* at 5. On February 22, 2022, Plaintiff registered the copyrights of four TFATK video podcasts it posted on YouTube the previous year between September 7, 2021, and October 25, 2021. *Statement* at 7.

Defendant Kyle Swindelles is a YouTube content creator residing in Providence, Rhode Island. *Statement* at 2. On February 18 and 19, 2022, Swindelles sent YouTube DMCA counter-notifications to dispute Plaintiff's takedown notices. *Statement* at 6. Plaintiff initiated the current lawsuit alleging copyright infringement on February 28, 2022. *Statement* at 8.

Plaintiff named four episodes of TFATK that were allegedly infringed:

- TFATK Episode 725 (Sept. 7, 2021); **Exhibit A**
- TFATK Episode 726 (Sept. 8, 2021); **Exhibit B**
- TFATK Episode 729 (Sept. 20, 2021); **Exhibit C**
- TFATK Episode 740 (Oct. 25, 2021). **Exhibit D.** *Statement* at 3.

Plaintiff did not identify which of Defendant's works allegedly infringed its copyrights when it filed suit in February of 2022. *Complaint.* Over a year later, this Court ordered Plaintiff to identify and produce the "Accused Videos" created by Defendant through a

1

March 21, 2023, order. *Docket*. Plaintiff produced the following videos in response to the order:

- Yew Neek Reaction Video: Schaub Apology (hereinafter "Reaction Video 1"); **Exhibit E**
- Yew Neek Short: Schaub Response (hereinafter "Short 1"); **Exhibit F**
- Yew Neek Reaction Video: Schaub Trashes Howard Stern (hereinafter "Reaction Video 2"); **Exhibit G**
- Yew Neek Short: Reunion (hereinafter "Short 2"). **Exhibit H**

The four named TFATK episodes have a total combined runtime of approximately three hundred seventy-four (374) minutes, or six (6) hours, fourteen (14) minutes. *Statement* at 17. The four named Yew Neek videos have a total combined runtime of approximately twenty-five (25) minutes. *Statement* at 30.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the movant carries its burden by "show[ing] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are "facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant produces such facts, the non-moving party must go "beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party cannot defeat summary judgment by presenting evidence so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Most pertinent to the current action, however, is that Federal Courts across the United States are constantly dismissing copyright infringement claims just like this one prior to trial on

fair use considerations. *See Monsarrat v. Newman*, 28 F.4ᵗʰ 314 (1ˢᵗ Cir. 2022); *Boesen v. United Sports Publ'ns. Ltd.*, 2020 U.S. Dist. LEXIS 240935 (E.D.N.Y. Dec 22, 2020); *Castle v. Kingsport Publ'g Corp.*, 2020 U.S. Dist. LEXIS 233919 (E.D. Tenn. Dec. 14, 2020); *Fellner v. Travel 4 All Seasons LLC*, 2020 U.S. Dist. LEXIS 198638 (D. Ariz. Sep. 30, 2020); *Chapman v. Maraj*, 2020 U.S. Dist. LEXIS 198684 (C.D. Cal. Sep. 16, 2020); *Schwartzwald v. Oath Inc.*, 2020 U.S. Dist. LEXIS 165641 (S.D.N.Y. Sep. 10, 2020); *Bain v. Film Indep., Inc.*, 2020 U.S. Dist. LEXIS 141859 (C.D. Cal. Aug. 6, 2020); *Marano v. Metro. Museum of Art*, 2020 U.S. Dist. LEXIS 122515 (S.D.N.Y. July 13, 2020); *Bell v. Worthington City Sch. Dist.*, 2020 U.S. Dist. LEXIS 96424 (S.D. Ohio June 2, 2020); *et al* (**numerous cases omitted for brevity**).

## III.    ARGUMENT

### A. Defendant's Videos Constitute Fair Use

The Copyright Act states "[F]air use of a copyrighted work … for purposes such as *criticism* **[or]** *comment* … is not an infringement of copyright." 17 U.S.C. § 107 (emphasis added). Section 107 sets forth four factors courts should use to determine the question of fair use; (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3)"the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The factors are non-exclusive and "weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). In the current action, all four factors weigh in favor of Defendant.

### 1. The First Fair Use Factor Favors Defendant.

The First Circuit Court of Appeals explained the first fair use factor as such:

> Our task under the first prong is to assess "whether and to what extent the new work is 'transformative,'" that is, "whether the new work merely supersedes the objects of the original creation" or whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."

*Monsarrat v. Newman*, 28 F.4th 314, 322 (1st Cir. 2022), [quoting *Society of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 59-60 (1st Cir. 2012) *and Campbell*, 510 U.S. at 579)]. The more "transformative" the new work, the less the significance of factors that weigh against fair use, such as use of a commercial nature. *Nuñez v. Caribbean Internat'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000), (quoting *Campbell, Id.).*

In the current case, Defendant created works of criticism and commentary regarding the TFATK podcast. The Supreme Court stated that the standard to determine whether a use constitutes as criticism is if it "reasonably could be perceived as commenting on the original or criticizing it, to some degree." *Campbell*, 510 U.S. at 583. This standard was formulated to avoid subjective value judgments, like whether the use was in good taste. Swindelles may have discussed subjects or expressed opinions that Plaintiff found objectionable, but it cannot support the notion that his videos were not "transformative" and distinct from the TFATK episodes.

While Swindelles' use could be considered minimally commercial (YouTube compensates content creators for advertising "click-throughs" from viewers of their videos), it is undisputed that his commentary made the videos an entirely different creation than the TFATK podcast episodes. The 1st Circuit has stated that "commercial gain alone is not dispositive." *Monserrat*, 28 F.4th at 322, *quoting Campbell*, 510 U.S. at

585. Commercial gain only becomes an important factor "the lesser the transformative nature of the work." *Id.*, *quoting Gregory*, 689 F.3d at 60.

The Supreme Court recently ruled that when a work is commercial and "share[s] the objectives" of the original work, it weighs against fair use under the first factor. *Warhol v. Goldsmith*, No. 21-869 (*U.S.* May 18, 2023), p. 24. This does not alter the fundamental analysis in the current dispute.[1] The Court in *Warhol* emphasized that the two works at issue were images of the singer Prince from the same source photo, both were used to depict Prince in a commercial print magazine, and such photos are regularly licensed for artistic derivatives. *Warhol*, at pp. 12-13, 22. The important distinction is that Swindelles' videos are short critical works that do not share the same objective or purpose as the long-form TFATK episodes. The *Warhol* opinion notes that because the Warhol work "'has no critical bearing on' Goldsmith's photograph," their claim to fair use "'diminishes accordingly (if it does not vanish).'" *Warhol*, p. 34, quoting *Campbell*, 510 U.S., at 580. Swindelles' works are obvious criticism, preserving the claims to fair use under the first factor. The TFATK episodes are extremely long works for viewers to enjoy the conversation of the respective hosts about dozens of subjects. Swindelles' critical shorts and reaction videos are for viewers to hear his personal opinion on a matter and engage in a discussion in the comments. These do not share the same objectives in any way, and are transformative in form and purpose.

Multiple jurisdictions have ruled that "reaction videos" (where a narrator or host "reacts" to a clip made by another person) can be transformative fair use. The Southern

---

[1] When the Court released the *Warhol* opinion, some commentators decried or cheered that the fair use defense could no longer be used for commercial works. This is not so. The Court is clear that the commercial nature of a use is "not dispositive." p. 18. The opinion even clarifies that Warhol's famous *Soup Cans* series (painted for commercial sale) were presumably fair use even though they directly copied Campbell's Soup's copyrighted logos. pp. 26-27.

District of New York found that mocking, sarcastically complimenting, mimicking, and expressing irritation towards a video constituted fair use as "quintessential criticism and comment." *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017). The Central District of California ruled similarly in *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015). The court found that the reaction videos at issue were "highly transformative" comment and criticism because:

> Equal's Three's episodes directly respond to and highlight humorous aspects of Jukin's videos. The episodes do so via the host's reactions to the videos, jokes, narration, costumes and graphics. The host's narration does not simply recount what is shown in Jukin's videos; instead the host makes comments about Jukin's videos that highlight their ridiculousness by creating fictionalized narratives of how the events transpired, using similies, or by directly mocking the depicted events and people
> …
> This is not a case where the addition of minimal narration, an introduction, or text did not change the essential character of the original work.

*Id.* at 1104-05.

Here, Defendant was acting similarly with the TFATK episodes. Swindelles directly mocked the TFATK on-air talent and gave his opinions of recent events in the podcasting or radio entertainment world. He even added his own video and graphics, and showed clips of other works to drive the discussion and support his commentary. His work was not "minimal narration, an introduction, or text" that "did not change the essential character of the original work." He made his own distinct videos with his own points of view. Plaintiff may have found them objectionable, but they do not constitute a copyright infringement.

### a. Reaction Video 1 Makes Fair Use of TFATK 725 Under the First Factor.

TFATK Episode 725 is a long-form audiovisual podcast with a runtime of just over eighty-five (85) minutes, or one (1) hour, twenty-five (25) minutes. **Ex. A**. The format is three co-hosts and a group of producers sitting and talking on camera in an unscripted, mostly free-form manner about various subjects. The hosts discuss multiple topics: their clothing and where they shop (**Ex. A** at 0:00:12), one host's trip to Delaware (at 0:1:42), another host's vacation to Montana (at 0:03:26), commercial advertiser reads (at 0:11:31), looking at each other's genitalia while using the restroom (at 0:14:40), exercise and nutrition (at 0:14:55), the recent drug overdoses of entertainers (at 0:19:01), the difficulties of being a comedian and podcaster (at 0:23:00), host Brendan Schaub's recent conflict with journalist Ariel Helwani (at 0:25:43), the reaction to host Bryan Callen's photo with politician Dan Crenshaw (at 0:33:35), President Donald Trump (at 0:40:02), more ad reads (at 0:42:05), a show producer's neck injury (at 0:43:23), another producer's trip to Arizona (at 0:53:42), the new Ford Bronco (at 0:55:30), and enduring boring conversations (at 0:59:26). The show then switches to the hosts discussing prepared "current events" led by a producer (at 1:02:05). The news discussed included stories of a missing Australian toddler (at 1:02:10), the death of a family member (at 1:04:20), clothing yet again (at 1:06:45), a woman wearing a bikini on a flight (at 1:08:18), a wrestler signing with WWE (at 1:09:56), UFC fights (at 1:11:46), a prank on a Virginia school board (at 1:15:53), an athlete's acrobatics (at 1:17:08), rappers Drake and Kanye West (at 1:18:26), a man who cut off his own penis during a police chase (at 1:20:42), singer Houston (at 1:21:37), and upcoming tour dates (at 1:23:35). As they

discuss the current events, a producer often shows videos or news stories created by individuals or entities outside the show to facilitate the discussion.[2]

Reaction Video 1 is an audiovisual commentary with a runtime of nine (9) minutes, forty-one (41) seconds. **Ex. E.** The work begins with the animated logo of the Yew Neek Ness YouTube page, then transitions to video of Defendant Swindelles (AKA "Yew Neek") sitting behind a microphone, wearing a ball cap with the flag of Cape Verde hanging behind him. Various computer-generated graphics surround the screen window containing the video of Swindelles. Swindelles discusses **one** topic in his video: his opinion of Brendan Schaub's apology to Ariel Helwani. Swindelles announces that this is a "reaction video" regarding Schaub's "somewhat of an apology." (**Ex. E** at 00:06). He prefaces that he will be showing the apology and Helwani's response, then provides background to the conflict (at 00:13). Swindelles then opens another video window on the screen and begins playing a clip from TFATK 725. (at 00:41). The clip plays for approximately seven (7) minutes, thirty-two (32) seconds as Swindelles interjects multiple times (at 00:56, 5:55 and 06:57) and can be seen on video reacting to the disjointed discussion with the computer graphics still on the screen. Swindelles then closes the screen showing the TFATK clip and mocks Schaub's apology, calling it "incoherent" and laughing as he notes that it mostly amounted to "sorry that you're so sensitive." (at 08:13). He also makes a joke about Schaub having "CTE" (Chronic Traumatic Encaphalopathy, a brain disorder associated with athletes who have suffered repeated blows to the head). (at 08:12). He then brings up another screen in the video showing Helwani's response: a video clip from the movie Billy Madison that Helwani

---

[2] TFATK presumably makes fair use of other copyright holders' content in this segment, though should Plaintiff prevail and achieve the changes in law it seeks in this action, those uses may be infringing.

posted to the social network Twitter. (at 08:38). Swindelles then adds commentary about how Helwani might respond, and again mocks the TFATK hosts for taking a week off to come up with such a weak apology. (at 8:57). He questions a tangential issue from the clip, and then closes the video by asking his viewers to voice their opinions of the apology in the video's comments. (at 09:24).

This is a reaction video as described in *Klein* and *Equals Three*. *Id.* Swindelles does not merely narrate what is happening in the video clip, but instead expresses his opinions and mocks the TFATK hosts for critical comedic effect. He has audiovisual elements not present in the TFATK clip that distinguish his video as its own distinct work. His video is mere minutes of commentary about a single topic discussed on a rambling podcast covering dozens of topics that lasts almost on hour and a half. To pretend these two videos are nearly the same for copyright purposes is silly. Reaction Video 1 is distinct and transformative in its use of the clip from TFATK 725. This is a clear case of fair use.

> b. **Short 1 Makes Fair Use of TFATK 726 Under the First Factor.**

TFATK Episode 726 is a long-form audiovisual podcast with a runtime of just over one hundred eight (108) minutes, or one (1) hour, forty eight (48) minutes. **Ex. B**. The format is three co-hosts and a group of producers talking in an unscripted, mostly free-form manner about various subjects as one host consumes alcohol. The hosts discuss multiple topics: poorly-selling tour dates (**Ex. B** at 0:00:03), being bad with names (at 0:02:47), their lives eight years ago (at 0:04:00), a Montana whiskey (at 0:04:48), UFC fighters (at 0:05:23), Shane Gillis' new comedy special (at 0:09:45), dealing with cold

weather (at 0:12:15), a coworker possibly having COVID (at 0:17:54), strength and athleticism in sports (at 0:18:31), UFC/MMA (at 0:26:50), a host's nicotine use (at 0:29:15), the new "Cinderella" movie featuring a man as the Fairy Godmother (at 0:30:15), mocking a gym patron for being gender non-conforming (at 0:32:12), COVID controversies (at 0:33:18), NFL football (at 0:40:45), commercial ad reads (at 0:53:57) the upcoming Belfort/Holyfield fight (at 0:58:40), photographer Eric Williams (at 01:16:40), a Hollywood ponzi scheme (at 1:21:00); missing children (at 1:22:18), shark diving (at 1:32:00), restaurants in Buffalo (at 1:37:40), child drummer Nandi Bushell (at 1:43:24), and tour dates (1:46:45). As they discuss the current events, a producer often shows videos or news stories created by individuals or entities outside the show to facilitate the discussion.

Short 1 is an audiovisual commentary with a runtime of only one (1) minute, fifty-one (51) seconds. **Exhibit F**. The work begins with the animated logo of the Yew Neek Ness YouTube page, then transitions to a still image of TFATK host Shapel Lacey from a clip of TFATK Episode 726. **Ex. F** at 0:04. The only audio over this still image is the voice of Defendant Swindelles. Swindelles explains that the video short is to discuss TFATK host Brendan Schaub responding to MMA journalist Ariel Helwani "destroying him." (at 0:09). This is the **one** subject Swindelles covers in this video short. He gives background to the conflict, joking that Schaub "fake apologized" to Helwani. (at 0:22). He then plays a thirty-nine (39) second clip from TFATK 726 where the hosts discuss a joke about the incident that was edited out of another show. (at 0:33) Schaub claims to not know anything about Helwani's response, then they awkwardly transition to talking about football. (at 1:01). Swindelles stops the TFATK clip (at 1:13), leaving the still

image of Shapel Lacey that started the clip. Audio of Swindelles voice then mocks the TFATK clip, using a "Schwabism" (an online term for host Brendan Schaub's frequent verbal gaffes and possible untruths) of "I never met him before, B." (at 1:16). He then makes fun of the response some more, asking, "That was the comeback?" as he notes that Helwani is just an MMA journalist while Schaub and Callen are comedians/podcasters who should have been able to muster a better retort. (at 1:24). He then expresses his opinion that Helwani is "the winner" of the conflict and ends the video with a repeat of the "great guys, never met 'em" Schwabism. (at 1:43).

Short 1 is an obvious fair use situation. Swindelles does not merely narrate what is happening in the video clip, but instead expresses his opinions and mocks the TFATK hosts for critical comedic effect. He has audiovisual elements not present in the TFATK clip that distinguish his video as its own distinct work. His video is mere minutes of commentary about a single topic discussed on a rambling, nearly two-hour podcast covering dozens of subjects. To pretend these two videos are nearly the same for copyright purposes is outrageous. Short 1 is distinct and transformative in its use of the clip from TFATK 726. This is a clear case of fair use.

c.    **Reaction Video 2 Makes Fair Use of TFATK 729 Under the First Factor.**

TFATK Episode 729 is a long-form audiovisual podcast with a runtime of just over eighty-one (81) minutes, or one (1) hour, twenty-one (21) minutes. **Ex. C**. The format is three co-hosts and a group of producers sitting and talking on camera in an unscripted, mostly free-form manner about various subjects. The hosts discuss multiple topics: Callen trying to FaceTime Schaub to meet a person they never name (**Ex. C** at 0:00:03),

Callen sending a photo of his genitalia to Schaub (at 0:01:17), the return of a producer (at 0:03:47), Halloween activities in Los Angeles (at 0:04:10), their favorite holidays (at 0:07:48), meeting Jay Leno at a car event (at 0:08:10), commercial ad reads (at 0:11:31), David Letterman (at 0:17:45), the current state of entertainment (at 0:19:12), more talk of Callen's genitalia (at 0:19:40), Jay Leno again (at 0:20:47), football and concussions (at 0:22:53), the waning popularity of network TV (at 0:26:46), Shane Gillis' comedy special (at 0:28:20), more ad reads (at 0:29:28), the photo of Callen's genitalia again (at 0:30:48) a producer's health and concert (at 0:31:24), tour dates (at 00:38:37), Usain Bolt's comments on Sha'Carri Richardson (at 0:39:40); rapper Lil Baby's fake watch (at 0:40:50), a mother ranting about anal sex at a school board meeting (at 0:47:13), another school board meeting rant (at 0:50:00), a man who defecated in a grocery freezer (at 0:53:55), Howard Stern's criticism of Joe Rogan (0:56:38), COVID/vaccine issues (at 0:58:32), an ethics complaint filed against Rep. Alexandria Ocasio Cortez (at 1:05:33), Robert Durst's conviction (1:08:09), Liam Gallagher and the band Oasis (at 1:11:24), Manny Pacquiao's possible run for President of the Philippines (at 1:16:16), and more tour dates (at 1:19:03). As they discuss the current events, a producer often shows videos or news stories created by individuals or entities outside the show to facilitate the discussion.

Reaction Video 2 is an audiovisual commentary with a runtime of about eleven (11) minutes, twenty-five (25) seconds. **Ex. G.** The work begins with the animated logo of the Yew Neek Ness Youtube page, then transitions to video of Defendant Swindelles (AKA "Yew Neek") sitting behind a microphone, wearing a ball cap with the flag of Cape Verde hanging behind him. Various computer-generated graphics surround the

screen window containing the video of Swindelles. Swindelles discusses **one** topic in his video: his opinion of Brendan Schaub's verbal attack on radio personality Howard Stern. Swindelles announces that this is a "reaction video" regarding the fact that Schaub "trashed Howard Stern." (**Ex. G** at 00:07). He prefaces that Schaub did not like that Stern went after Joe Rogan, then mentions that he will give his thoughts on the situation (at 00:14). He uses the mocking Schwabism "what've we done here, B," then says he will see if he agrees or not. (at 00:26). Swindelles then opens another video window on the screen and begins playing a clip from TFATK 729. (at 00:37). The clip plays for approximately eight (8) minutes, fifty-five (55) seconds as Swindelles interjects multiple times (at 01:30, 3:55 and 09:33) and can be seen on video reacting to the wandering discussion with the computer graphics still on the screen. Swindelles then closes the screen showing the TFATK clip (at 09:41). He notes that Schaub incorrectly described how SiriusXM Radio counts subscribers (at 09:40). He then asks the question "is what Brendan Schaub said correct?" (at 09:56). Swindelles expresses his opinion that Schaub actually appears to be correct and that he agrees with him. (at 10:03). He jokes that Schaub must watch his YouTube channel to know that much about Howard Stern (the Yew Neek Ness channel covered various entertainment subjects including radio, comedy, podcasts, and gaming), questioning how he has so much knowledge about an "irrelevant" figure. (at 10:05). He then makes fun of Schaub for his need to "protect Bapa Rogan." ("Bapa" is another Schwabism) (at 10:22). He goes through the points on which he concurs and laughs at the notion that he actually agrees with Schaub on something. (at 10:30). Swindelles then asks his viewers to give their thoughts on the situation in the video comments. (at 11:18).

This is a reaction video as described in *Klein* and *Equals Three*. *Id*. Swindelles does not merely narrate what is happening in the video clip, but instead expresses his opinions and mocks the TFATK hosts for critical comedic effect. He has audiovisual elements not present in the TFATK clip that distinguish his video as its own distinct work. His video is mere minutes of commentary about a single topic discussed on a rambling podcast covering dozens of topics that lasts almost an hour and a half. To pretend these two videos are nearly the same for copyright purposes is unserious. Reaction Video 2 is distinct and transformative in its use of the clip from TFATK 729. This is a clear case of fair use.

d. **Short 2 Makes Fair Use of TFATK 740 Under the First Factor.**

TFATK Episode 740 is a long-form audiovisual podcast with a runtime of over ninety-nine (99) minutes, or one (1) hour, thirty-nine (39) minutes. **Ex. D**. The format is three co-hosts and a group of producers sitting and talking on camera in an unscripted, mostly free-form manner about various subjects. The hosts discuss multiple topics: neck injuries (**Ex. D** at 0:00:08), the upcoming "Fight Companion" show (at 0:02:30), a "Tough Mudder" race (at 0:06:28), commercial ad reads (at 0:10:13), top "Tough Mudder" athletes (at 0:21:30), comedian Bob Saget (at 0:30:25), Halloween activities at Universal Studios (at 0:32:22), a host's trip to Arizona (at 0:39:01), competitive cheerleading (at 0:40:00), Bob Saget again (at 0:43:27), Halloween plans/parties (at 0:40:27), seeing Hollywood actresses at a party (at 0:52:14), more ad reads (at 0:56:42), Sammy "the Bull" Gravano's YouTube videos (at 0:58:08), online comments made by a transgender activist (at 0:59:49), Alec Baldwin's accidental shooting (at 1:02:58), a man

14

hit by toilet waste dropped from an airplane (at 1:09:38), a pregnancy prank (at 1:11:48), a Mexican woman killed in a Halloween prank (at 1:13:46); organized crime in Mexico and New York (at 1:14:25), singer James Blount (at 1:16:55), protest footage from the Netflix offices (at 1:18:53), Brian Laundrie found dead (at 1:20:24), missing persons (1:22:10), Sammy Gravano again (at 1:23:18), a Netflix series about a Korean serial killer (at 1:28:41), country singer Kane Brown (1:31:50), a video of a cyclist run over by a van (at 1:33:06), cutting off a leg for a billion dollars (at 1:36:00), and tour dates (at 1:38:15). As they discuss the current events, a producer often shows videos or news stories created by individuals or entities outside the show to facilitate the discussion.

Short 2 is an audiovisual commentary with a runtime of only two (2) minutes, eight (8) seconds. **Exhibit H**. The work begins with the animated logo of the Yew Neek Ness YouTube page, then transitions to a still image of the TFATK hosts from a clip of TFATK Episode 740. **Ex. H** at 0:06. The only audio over this still image is the voice of Defendant Swindelles. Swindelles explains that the video short is to discuss TFATK hosts Bryan Callen and Brendan Schaub having a "reunion" the following Saturday. (at 0:11). This is the **one** subject Swindelles covers in this video short. He then plays a fifty-three (53) second clip from TFATK 740 where the hosts discuss an upcoming "Fight Companion" show featuring Schaub, Callen, former MMA fighter Josh Thompson and comedian Chris D'Elia. (at 0:14) Swindelles stops the TFATK clip (at 1:11), leaving the still image of the hosts that started the clip. Audio of Swindelles voice then mocks the TFATK "reunion," noting that D'Elia is reuniting with them not on TFATK, but on a YouTube channel live stream where Schaub refuses to read the viewer comments. (at 1:12). Swindelles calls the reunion "very, very interesting" and coyly speculates "I

wonder if any mention of the reason why it's a reunion is going to happen."[3] (at 1:38). He then laughs that the comments section of the stream is going to be "bumping," i.e. extremely busy, as he spouts the Schwabism "never read 'em, B." (at 1:59). The short video concludes with Swindelles expressing his excitement in anticipation of watching the "reunion," and asks his viewers to give their thoughts in the comments. (at 2:04).

Short 2 is an obvious fair use situation. Swindelles does not merely narrate what is happening in the video clip, but instead expresses his opinions and mocks the TFATK hosts for critical comedic effect. He has audiovisual elements not present in the TFATK clip that distinguish his video as its own distinct work. His video is mere minutes of commentary about a single topic discussed on a rambling, almost two-hour podcast covering dozens of subjects. To pretend these two videos are nearly the same for the purposes of copyright litigation may be considered a form of absurdist comedy. Short 2 is distinct and transformative in its use of the clip from TFATK 740. This is a clear case of fair use.

### 2. The Second Fair Use Factor Favors Defendant.

The next focus is the "nature of the copyrighted work." 17 U.S.C. § 107(2). This second factor has rarely played a significant role in the determination of a fair use dispute. See William F. Patry, *Patry on Fair Use* § 4.1 (2015). Courts have generally considered two aspects of the work in evaluating its "nature:" (1) the extent to which it is a creative work as opposed to a factual work, and (2) whether it is unpublished. *Nuñez*, 235 F.3d at 23. The scope of fair use is narrower when works "fall closer to creative end of the

---

[3] Callen and D'Elia were both previously accused of sexual improprieties, causing them to take leave from their respective shows and stay mostly out of the public eye for about a year.

spectrum than the informational or factual end" and when they have not previously been published. *Monsarrat*, 28 F.4th at 323, quoting *Gregory*, 689 F.3d at 61-62.

While not generally a dispositive factor, it appears TFATK is arguably a creative work where the on-air hosts discuss current events, sports, and their day-to-day happenings. TFATK is disseminated free of charge to the public on YouTube and on online podcast platforms. The fact that the work is creative is of "limited usefulness where, as here, the creative work of art is being used for transformative purpose." *Cariou*, 714 F.3d at 710. Nor is this a situation where Defendant usurped "the author's right to control the first public appearance of his expression." *Swatch Grp. Mgmt. Servs. Ltd. V. Bloomberg L.P.*, 756 F.3d 73, 88 (2nd Cir. 2001). Therefore, this factor favors Defendant, given the highly transformative nature of the videos and the limited weight given this factor.

### 3.  The Third Fair Use Factor Favors Defendant.

The third factor is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). However, such an inquiry must be a flexible one, rather than a simple determination of the percentage used. *Nuñez*, 235 F.3d at 24; see *Campbell* 510 U.S. at 588-89 (acknowledging that for a parody to be effective, it had to take enough material to evoke the original). Even verbatim copying can constitute fair use if it is "consistent with or [no] more than necessary to further the 'purpose and character of the use.'" *Id.* (quoting *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 144 (2nd Cir 1998). The law does not, however, require that the secondary artist may take no more than is necessary. *Cariou v. Prince*, 714 F.3d 694 (2nd Cir. 2013).

This factor favors Defendant by a landslide. Plaintiff claims that Defendant's use of a few minutes of TFATK content taken from over six (6) hours of podcasts is a devastating infringement of its copyright. While there is no legal bright line as to how much use is permissible, the facts support that for Defendant's purpose to comment and criticize, a few minutes taken from six hours is entirely reasonable. The clips used were the appropriate length to capture the verbose, digressive conversations of the TFATK hosts on a topic. Swindelles engaged in a highly transformative critique of TFATK, and there is no legal question that it was fair use.

### 4. The Fourth Fair Use Factor Favors Defendant.

The fourth statutory factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[4] Under this factor, the impact to Plaintiff's overall business is irrelevant, and the court should focus only on the effect any copying has on the market for the original work. *Nuñez*, 235 F.3d at 24. The Supreme Court made clear that because a critique "may quite legitimately aim at garroting the original, destroying it commercially as well as artistically, the role of courts is to distinguish between 'biting criticism that merely suppresses demand and copyright infringement which usurps it.'" *Campbell*, 510 U.S. at 592.

No viewer in the public is going to mistake Swindelles' short critique videos for Plaintiff's hours-long podcasts or consume them in their place. TFATK offers a long-form podcast, and Swindelles has made short videos critical of topics from that podcast. Plaintiff cannot argue Defendant's use harmed its ability to license its work for critical

---

[4] Defendant notes that the burden of proof to show market harm lies with Plaintiff. *See Adobe Sys. Inc. v. Christenson*. 809 F.3d 1071, 1079 (9th Cir. 2015) ("fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party.") Proof of market harm is mostly within the exclusive knowledge of Plaintiff, therefore, it must bear the burden on this factor.

videos because "the law recognizes no derivative market for critical works." *Campbell*, 510 U.S. at 592. Also, the fact that a critique "may impair the market for derivative uses by the very effectiveness of its critical commentary is no more relevant under copyright than the like threat to the original market." *Id.* at 593. The Supreme Court explained:

> This distinction between potentially remediable displacement and unremediable disparagement is reflected in the rule that there is no protectible derivative market for criticism. The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop. Yet the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market.

*Campbell*, 510 U.S. at 592. Swindelles' videos do not encroach on the original market for TFATK, and a protectible derivative market for similar critical works simply does not exist.

Most importantly, the more transformative a work is under the first fair use factor, the less possibility of market harm under the fourth factor. As the Court in *Campbell* stated:

> But when, on the contrary, the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred. Indeed, as to parody pure and simple, it is more likely that the new work will not affect the market for the original in a way cognizable under this factor, that is, by acting as a substitute for it ("supersed[ing] [its] objects"). See Leval 1125; Patry & Perlmutter 692, 697-698. This is so because the parody and the original usually serve different market functions. Bisceglia, ASCAP, Copyright Law Symposium, No. 34, at 23.
> *Campbell*, at 591.

TFATK and Swindelles' videos are audiovisual works, but the transformative nature of Swindelles' criticism videos changes their market function. Plaintiff has previously speculated that Swindelles' videos could usurp its own in the market for a "non-critical highlight reel" (see *Plaintiff's Memo in Support of Its Objection to*

*Plaintiff's Motion for Summary Judgment*), but that is an intentional dodge of the legal standard that applies to Defendant's critical works. As well-established by *Campbell* and in Defendant's motion for summary judgment, a derivative market for such criticism does not exist.[5] Plaintiff is left to invent hypothetical markets that obfuscate the applicable law because it has presented absolutely nothing to support its claims. A court can only evaluate existing facts and actual markets, not the fantasies concocted in the imaginations of lawyers. For these reasons, Defendant's videos were fair use and Plaintiff's claims should fail.

## CONCLUSION

This case presents no genuine issues of material fact for the court or a jury to decide, and summary judgment for defendant is a common way for this type of case to end. Defendant's use of the works was fair use. For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment for Defendant Kyle Swindelles and award him monetary relief for all costs related to this action including: copying/printing expenses, notary fees, mailing costs, income lost due to the wrongful deactivation of his YouTube channel, and anything else the Court deems appropriate.

Respectfully submitted,

*Kyle Swindelles*

Kyle Swindelles, Defendant, *pro se*
41 Marietta Street, 2nd Floor, Unit 4
Providence, Rhode Island 02904
Phone: (401) 230-5061
e-mail: yewneekent@gmail.com

---

[5] Defendant's videos are also obviously not anything similar to "highlight reels" of TFATK.