# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THICCC BOY PRODUCTIONS INC.<br><br>         Plaintiff,<br><br>    v.<br><br>KYLE SWINDELLES a/k/a YEW NEEK NESS; and DOES 1 through 10,<br><br>         Defendants. | Case No. 1:22-cv-00090-MSM-PAS<br><br>**PLAINTIFF THICCC BOY PRODUCTIONS INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................1

II.  FACTS ...............................................................................................................1

III.  LEGAL STANDARD.........................................................................................1

IV.  DEFENDANT DID NOT MAKE FAIR USE OF THE WORKS. ......................2

    A.  Purpose and Character of the Use ...........................................................2

        1.  Video 1 (Swindelles's "Reaction Video 1" to Episode 725) .......7

        2.  Video 2 (Swindelles's "Short 1" of Episode 726) ......................9

        3.  Video 3 (Swindelles's "Reaction Video 2" to Episode 729) ......9

        4.  Video 4 (Swindelles's "Short 2" of Episode 740) ....................10

    B.  Nature of the Copyrighted Works.........................................................12

    C.  Amount and Substantiality of the Portion Copied ................................12

    D.  Effect on the Potential Market for the Copyrighted Work ...................14

V.  CONCLUSION.................................................................................................18

## **TABLE OF AUTHORITIES**

Page

### **FEDERAL CASES**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    143 S. Ct. 1258 (2023) ................................................................. 2, 3, 4, 9, 11, 12

*Brammer v. Violent Hues Prods., LLC*,
    922 F.3d 255 (4th Cir. 2019) ............................................................ 4

*Bus. Casual Holdings, LLC v. TV-Novosti*,
    No. 21-CV-2007 (JGK), 2022 WL 784049 (S.D.N.Y. Mar. 14, 2022) ........................... 7

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
    196 F.Supp.3d 395 (S.D.N.Y. 2016) ................................................... 15

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ....................................................... 2, 3, 4, 15, 16

*Comerica Bank & Trust, N.A. v. Habib*,
    433 F. Supp. 3d 79 (D. Mass. 2020) ..................................................... 5

*Elvis Presley Enters. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003) ........................................................... 5

*Equals Three v. Jukin Media*,
    139 F. Supp. 3d 1094 (C.D. Cal. 2015) .................................................. 6

*Fioranelli v. CBS Broad. Inc.*,
    551 F. Supp. 3d 199 (S.D.N.Y. 2021) ................................................... 4

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989, 995 (9th Cir. 2011) (per curiam) .......................................... 5

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) .......................................................... 2, 12, 13, 14

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017) .................................................... 6

*McGucken v. Pub Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ......................................................... 15

*Monsarrat v. Newman*,
    28 F.4th 314 (1st Cir. 2022) ........................................................ 1, 13

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    923 F. Supp. 1231 (N.D. Cal. 1995) .................................................... 7

*See Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
    297 F. Supp. 3d 339 (S.D.N.Y. 2017) ................................................. 15

*Shirman v. Whec-TV, LLC*,
    No. 18-CV-6508-FPG, 2019 WL 2163045, (W.D.N.Y. May 17, 2019) ........................... 5

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012) ...................................................................... 2, 4, 9, 11, 12, 14

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado*,
    754 F. Supp. 2d 219 (D. Mass. 2010), *aff'd*, 689 F.3d 29 (1st Cir. 2012) ........................ 1

*Vil v. Poteau*,
    No. 11-CV-11622-DJC, 2013 WL 3878741 (D. Mass. July 26, 2013) ........................... 15

## **STATE STATUTES**

17 U.S.C. § 101 ...................................................................................................................... 12

17 U.S.C. § 107 ........................................................................................................................ 2

17 U.S.C. § 107(1) .................................................................................................................... 2

17 U.S.C. § 107(2) .................................................................................................................. 12

17 U.S.C. § 107(3) .................................................................................................................. 12

17 U.S.C. § 107(4) .................................................................................................................. 15

35 U.S.C. § 107(1) .................................................................................................................. 11

## I.  INTRODUCTION

This case is about Defendant Kyle Swindelles's ("Defendant") infringement of Plaintiff Thiccc Boy Productions Inc.'s ("Plaintiff") copyrighted works, namely, four episodes of the podcast *The Fighter and The Kid* (the "Works") by identically copying substantial portions of the Works into four infringing videos (the "Infringing Videos").   Defendant has asserted a defense of fair use.  The Court should reject Defendant's defense and find, as a matter of law, that Defendant did not make fair use of the Works.  As discussed below, Defendant admitted to (a) his substantial, identical copying of protectable expression from each of the Works; (b) adding *no* comment or criticism of the Works themselves; (c) adding minimal, if any, comment or criticism of the content of the Works; and (d) earning revenue from the advertising of the Infringing Videos.

## II.  FACTS

The relevant facts are set forth in the statement of undisputed facts (ECF No. 50, "SUF") filed with Plaintiff's second motion for summary judgment, the statement of disputed facts and the additional undisputed facts ("AUF") filed with this opposition, all of which are incorporated by reference herein.

## III.  LEGAL STANDARD

"Fair use is an 'affirmative defense' for which its proponent -- in this case, [Defendant] -- bears the burden of proof."  *Monsarrat v. Newman*, 28 F.4th 314, 321 (1st Cir. 2022).  "If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Soc'y of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado*, 754 F. Supp. 2d 219, 227 (D. Mass. 2010), *aff'd*, 689 F.3d 29 (1st Cir. 2012).

IV.    **DEFENDANT DID NOT MAKE FAIR USE OF THE WORKS.**

Defendant's sole defense to his admitted copying of protectible expression from each of the Works is his contention that he made "fair use" of them.  Defendant fails to satisfy his burden to this defense in his Second Motion for Summary Judgment (ECF No. 47, the "MSJ") as a matter of law.  There are four statutory factors that a court must consider in evaluating a fair use defense: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.   The last factor—the effect upon the market—"is undoubtedly the single most important element of fair use."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 64 (1st Cir. 2012).

   A.    **Purpose and Character of the Use**

The first factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1); *Gregory*, 689 F.3d at 59.  Defendant argues that because his works are criticism (although not of the underlying works, as required), they are presumptively fair.  Such presumption is false.  "Like a book review quoting the copyrighted material criticized, parody may or ***may not*** be fair use, and petitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair."  *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 581 (1994) (emphasis added); *Harper & Row*, 471 U.S. at 561 ("[Whether]  a use referred to in the first sentence of section 107 is a fair use in a particular case will depend upon the application of the determinative factors . . .").

The Supreme Court's recent clarifications of the first fair use factor confirms that this factor weighs against fair use by Defendant as a matter of law.  In *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, Warhol created a silkscreen using Goldsmith's photograph of the

musical artist Prince (the "Silkscreen") and licensed it for use by Vanity Fair magazine. 143 S. Ct. 1258, 1266 (2023). The Court agreed with the Second Circuit that this factor favored Goldsmith, even though the Silkscreen added new expression to Goldsmith's photograph (the "Photograph"). *Id.* at 1273.

First, *Warhol* confirmed that the focus is on the purpose and character of the ***use*** of the work, not the artistic purpose of the ***work*** or whether new expression is added. *Id.* at 1273. Warhol contended that his work was "transformative" because it conveyed "a different meaning or message than [Goldsmith's] photograph." *Id.* at 1273. The Supreme Court, however, rejected this argument because the first factor focuses on whether the allegedly infringing ***use*** of the original has a further purpose or character, not on whether the new ***work*** has a different meaning or message as the result of adding new expression. *Id.* at 1273-75.

Second, *Warhol* analyzed the Supreme Court's precedent on fair use as relating to criticism and parody. The addition of "something new" does not, by itself, "render such use fair," and the smaller the difference, the less likely the first factor weighs in favor of fair use. *Id.* at 1275. Indeed, *Warhol* pointed out that in *Campbell* even though "2 Live Crew transformed Orbison's song by adding new lyrics and musical elements, such that 'Pretty Woman' had a new message and different aesthetic than 'Oh, Pretty Woman'" and "the whole genre of music changed from rock ballad to rap" that "was not enough for the first factor to weigh in favor of fair use . . . ." *Id.* at 1275. It was only after the Court determined that 2 Live Crew had created a parody, "a distinct purpose of commenting on the original or criticizing it," that the Court found the first factor favored fair use. *Id.* (citing *Campbell*, 510 U.S. at 580-83).

Third, the Supreme Court found that there must be a "*compelling*" justification for the use of a copyrighted work. *Id.* at 1276 (quoting *Campbell*, 510 U.S. at 580-81). "[A] use may be justified because copying is ***reasonably necessary*** to achieve the user's new purpose." *Id.* (emphasis added). "Like satire that does not target an original work, AWF's asserted commentary "can stand on its own two feet and so requires justification for the very act of borrowing." *Warhol*, 143 S. Ct. at 1285.

Fourth, *Warhol* confirmed that the justification relates to the use of ***the copyrighted work itself***, not what is depicted in that work.  Because Warhol's new work "has no critical bearing on ***Goldsmith's photograph***, the commentary's claim to fairness in borrowing from her work diminishes accordingly (if it does not vanish)."  *Id.* at 1285 (internal citation omitted, emphasis added)[1]; *accord Campbell*, 510 U.S. at 583 (in determining whether 2 Live Crew's song constituted fair use of the song *Pretty Woman*, focusing on whether it "reasonably could be perceived as commenting on the original or criticizing it, to some degree."); *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 264 (4th Cir. 2019) (not fair use to use photograph "expressly for its content"); *Fioranelli v. CBS Broad. Inc.*, 551 F. Supp. 3d 199, 233 (S.D.N.Y. 2021) ("Defendants, however, seem to misunderstand the meaning of comment, criticism, and news reporting in the fair use context. 'Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.'" (emphasis original)).

In addition to requiring that a new work comment on the original work itself, not its content, the commentary must be "substantial."  "There must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work." *Gregory*, 689 F.3d at 60.  In *Gregory*, the First Circuit found that a defendants' use of religious translations was not transformative where the new works "reflect[ed] minimal 'intellectual labor and judgment'" and were "essentially verbatim or near-verbatim copies of the Works." *Id.*

---

[1] While Defendant agrees that *Warhol* requires that his videos criticize Plaintiff's copyrighted works (MSJ, 5), he attempts a sleight of hand by arguing that "Swindelles' works are obvious criticism." However, Swindelles offers no criticism of the copyrighted Works, as required. *Warhol*, 143 S. Ct. at 1276.  Instead, his limited comments address merely the content of the Works (i.e., the topics discussed within the Works and the individuals that appear).  Defendant also misstates *Campbell*, claiming that the Court "stated that the standard to determine whether a use constitutes as criticism is if it "reasonably could be perceived as commenting on the original or criticizing it, to some degree." MSJ, 4.  The Court was discussing *parody,* not criticism. *Campbell,* 510 U.S. at 582 ("The threshold question when fair use is raised in defense of parody is whether a parodic character may reasonably be perceived.").

In the case of videos, "voice-overs do not necessarily transform a work." *Elvis Presley Enters. v. Passport Video,* 349 F.3d 622, 628-29 (9th Cir. 2003), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 995 (9th Cir. 2011) (per curiam). In a case similar to the one here, the District of Massachusetts found that YouTube clips from live performances of the musician Prince were ***not*** transformative even though the YouTuber had captured "reactions from the crowd" and offered his own views and comments like "Amazing LIVE rare performance" and "Prince showing off his talents." *Comerica Bank & Trust, N.A. v. Habib*, 433 F. Supp. 3d 79, 92-93 (D. Mass. 2020). The court found that such commentary by the YouTuber did not "imbue Prince's musical compositions with new meaning and add any of his own expression," and that his opinions "reflected minimal intellectual labor and judgment." *Id.*

Here, as described for each Infringing Video below, Defendants' "reaction" videos provide no commentary or criticism of Plaintiff's *copyrighted works* (and only minimal commentary on the *content* of those works). AUF, ¶ 52. The Infringing Videos mainly consist of long stretches of Plaintiff's Works in which the hosts discuss a diverse range of topics, from COVID vaccine policies to famous UFC fighters, most of which topics are not commented on, criticized, or addressed in any way. Indeed, Defendant offers short and superficial dialogue of only a small selection of the content discussed in the clips. And for the few topics he does discuss, he offers only vague and superficial comments of approval or disapproval, or just plain summaries, rather than any "real" or "substantial" analysis of the copyrighted materials. *See Elvis Presley*, 349 F.3d at 628-29 (no fair use where clip of Elvis played for over one minute, and voice-over was "used for reference purposes"); *see Comerica*, 433 F. Supp. at 92 ("messages of approval [] [i.e., "amazing" performance] do not endow the copyrighted material with any new purpose"); *Shirman v. Whec-TV, LLC*, No. 18-CV-6508-FPG, 2019 WL 2163045, at *4 (W.D.N.Y. May 17, 2019) (no transformation where "broadcast could be reasonably viewed as a mere summary of the contents of Shirman's video … ***inserting a voice-over, did not change its purpose***.") (emphasis added).

Nor does Defendant offer any justification, let alone a "compelling" one, for using Plaintiff's works as *Warhol* requires. Indeed, Defendant admitted in deposition that, after his original channels were taken down, he continued to make videos that are critical of Brendan Schaub, ***without "using any of [Plaintiff's] content."*** AUF, ¶¶ 83, 84 (Defendant agreeing that the "vast majority" of the 226 videos on his *current* channel "relate to Brendan Schaub," "eight of the top ten viewed videos … relate to Brendan Schaub," and that the number one and two videos on the channel have been viewed over 300,000 times). Defendant has thus admitted that he does not need to use Plaintiff's copyrighted works to carry out his work. Accordingly, Defendant fails to demonstrate that his use of Plaintiff's works was "*reasonably necessary*" to achieve his purpose.

Defendant cites two pre-*Warhol* district court cases for the proposition that "reaction videos … can be transformative fair use." MSJ, 5-6. In the first case, *Hosseinzadeh v. Klein*, the videos at issue were very different from those here. The alleged infringer would "intersperse[] relatively *short* segments [of the copyrighted work] with *long* segments of [] commentary." 276 F. Supp. 3d 34, 40 (S.D.N.Y. 2017) (emphasis added). Here, the opposite is true, as the structure of the Infringing Videos consists of relatively *long* portions of the copyrighted Works, followed by *much shorter* talking by Defendant (as demonstrated for each Infringing Video below).

In the second case, *Equals Three v. Jukin Media*, the court found that certain videos were fair use because they did not "simply recount what is shown in" the copyrighted works, but instead, engaged in highly-creative dialogue in which there were "fictionalized narratives of how the events transpired." 139 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015). Importantly, for another video, the court found *no* fair use where the purpose of the video "was to make two general, broad points that were not *directly aimed* at criticizing or commenting on the *video*." *Id.*, 1105 (first emphasis added, second emphasis original). Here, the Infringing Videos are more like the video in *Equals Three* found to *not* be fair use, as, at best, Defendant recounts what was shown (e.g., "this is the apology"), makes general points about one of the hosts, and provides no

commentary on *the Work itself*. Thus, if anything, *Equals Three* confirms that Defendant did not make fair use of the Works.

Other district courts have found that verbatim copying, along with commentary or criticism that is minimal or not "meaningful," fails to meet the standard for "fair use." *See Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK), 2022 WL 784049, at *3 (S.D.N.Y. Mar. 14, 2022) ("The defendant's videos take portions of the plaintiff's videos, re-arrange them, and add new commentary to them. But the defendant has not made any meaningful changes to the visual clips themselves."). That is especially the case when the commentary, as here, is extremely limited. *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1249 (N.D. Cal. 1995) ("[W]here that 'criticism' consists of copying large portions of plaintiffs' works—and sometimes all of those works—with often no more than one line of criticism, the fair use defense is inappropriate."). A review of each of the Infringing Works shows that Defendant did not engage in transformative use.

### 1.   <u>Video 1 (Swindelles's "Reaction Video 1" to Episode 725)</u>

Video 1 was created by Defendant and posted by Defendant on YouTube. AUF, ¶¶ 37, 38. Defendant identically copied *seven minutes and thirty-two seconds (7:32)* of audio-visual content from Episode 725 into Video 1, which plays without interruption. MSJ, 8. The total length of Video 1 (not including logo intro) is 9:38—Episode 725 makes up 78.2 percent of Video 1. AUF, ¶ 44. Defendant contends that the clip is "regarding Schaub's 'somewhat of an apology'" to UFC journalist Ariel Helwani—alleged commentary on the *contents* of Episode 725, not on the copyrighted work *itself*. MSJ, 8. And that commentary on the *content* of Episode 725 is neither real nor substantial. For a few brief seconds, Brendan Schaub states that he texted Mr. Helwani with an apology. ECF No. 47, Ex. E. However, Mr. Schaub does not describe the content of his apology. *Id.* Additionally, Mr. Schaub, along with his co-hosts Bryan

Callen and Shapel Lacey, discuss a range of other topics during the over *seven*-minute conversation copied by Defendant.  AUF, ¶ 45.[2]

In Video 1, Defendant stops the clip of Episode 725 and provides little, if any, real or substantive comment on these other topics.  As Defendant described in his motion for summary judgment, he "mocks Schaub's apology" to Mr. Helwani as "incoherent" and "makes a joke about Schaub having CTE."  MSJ, 8.  He ***not*** address the other topics that form the bulk of the clip taken from Episode 725.  *Id.*  Indeed, Defendant's motion concedes that he "discussed **one** topic in his video: his opinion of Brendan Schaub's apology to Ariel Helwani." *Id.* (emphasis original).  Moreover, Defendant's claim that he is criticizing Schaub's *apology* is dubious, as there is no apology to mock, given that the content of the apology to Mr. Helwani was never shown in the clip, and the copied portions involve the host discussing Mr. Helwani's journalistic career and other UFC issues.  AUF, ¶ 45.

Defendant then "brings up another screen in the video showing Helwani's response: a famous video clip from the movie Billy Madison" in which a school principal offers a humorous critique of a student's performance in an academic decathlon.  In deposition, Defendant admitted that he did not copy the video posted by Mr. Helwani because Defendant was able to express his opinion on Mr. Helwani's and Mr. Schaub's respective views "without actually having to play [Mr. Helwani's] video."  AUF, ¶ 46.  There is likewise no reason to play Plaintiff's work, as Defendant could have simply discussed Mr. Schaub's views of Mr. Helwani without playing the copyrighted Work (as he did for Mr. Helwani).  In a further demonstration of the lack of critical commentary offered by Defendant, Defendant concludes by admitting his ignorance of these topics, stating "*I don't know much about these guys.* Never met them, B. *That was the apology.* Let me know your thoughts in the comments."  AUF, ¶ 46.

---

[2] For example, the hosts discuss Mr. Schaub's appearance on other podcasts, current issues in the UFC world, Mr. Helwani's career as a journalist, including Mr. Helwani's coverage of other UFC fighters, such as "Rampage" Jackson, and how Mr. Helwani had been reportedly banned from UFC events because he broke a story about the UFC planning to have a fighter (Brock Lesnar) make a surprise fight appearance.  AUF, ¶ 45.

### 2.     <u>Video 2 (Swindelles's "Short 1" of Episode 726)</u>

Video 2 was created by Defendant and posted on YouTube by Defendant. AUF, ¶¶ 37, 39. Defendant identically copied 0:39 of audio-visual content, and additionally 1:00 of visual content from Episode 726 into Video 2, which has a total duration (not including the logo introduction) of approximately 1:47 (i.e., 91.6 percent of Video 2 is made up of Episode 726). AUF, ¶ 47.

During the clip, the hosts discuss several topics that Defendant ***never*** addresses in his video, including a joke that was edited out of another show. AUF, ¶ 48. The hosts never mention Helwani by name, and the hosts quickly move on to another topic. *Id.* As Defendant's MSJ describes, Defendant stops the clip and "makes fun of the response," stating that Schaub and Callen "should have been able to muster a better retort" or "comeback" since they are comedians. MSJ, 11. At deposition, Defendant confirmed that he didn't parse out what was said or comment on what was discussed in the clip from Episode 726. AUF, ¶ 48. Accordingly, there was no commentary, let alone the "real, substantial condensation of the materials, and intellectual labor and judgment" required to be transformative, even if Defendant had targeted the Work itself. *Gregory*, 689 F.3d at 60.

Further, Defendant does not show that there was a "compelling" justification for Defendant to use this clip. *Warhol*, 143 S. Ct. at 1276. Defendant could easily have expressed his views without the need to copy the Work, especially considering that Defendant's voice-over is non-responsive to the bulk of the clip—i.e., the joke that was edited out of the other show.

### 3.     <u>Video 3 (Swindelles's "Reaction Video 2" to Episode 729)</u>

Video 3 was created by Defendant and posted on YouTube by Defendant. AUF, ¶¶ 37, 38. Defendant identically copied 8:55 of audio-visual content from Episode 729 into Video 3, which has a total duration (not including the logo introduction) of approximately 11:22 (i.e., 78.5 percent of Video 3 is made up of Episode 729). AUF, ¶ 49. Defendant contends that the clip is "regarding the fact that Schaub 'trashed Howard Stern.'" MSJ, 13. For a short part of the video, the hosts mention Howard Stern, Stern's current relevance, and Stern's statements regarding Joe

Rogan relating to COVID. AUF, ¶ 50. However, for the bulk of the nearly ***nine***-minute-long conversation, the hosts discuss a litany of topics related to COVID.[3] This discussion is led primarily by co-host Bryan Callen. Towards the end, Schaub discusses his views of SiriusXM, and his preference for iTunes and Spotify. *Id.* The hosts also comment on their visits to the SiriusXM corporate offices. *Id.*

In addition to conceding that he did not comment on the copyrighted work itself (AUF, ¶ 52), Defendant admitted that he offers ***no*** commentary or criticism on the vast majority of the topics discussed in the clip taken from Episode 729. AUF, ¶ 51 (admitting he addressed none of Callen's comments or COVID issues). Defendant's MSJ confirms that he "discusses **one** topic in his video: his opinion of Brendan Schaub's verbal attack on radio personality Howard Stern." MSJ, 13. Thus, there was no "*compelling*" justification for Defendant to copy the entire nine-minute conversation.

Further, Defendant admitted that his only commentary in Video 3 was that he agreed with host Schaub about all the things he said about Howard Stern. AUF, ¶ 51. Accordingly, there was no commentary, let alone the "real, substantial condensation of the materials, and intellectual labor and judgment" required to be transformative, even if Defendant had targeted the Work itself. *Gregory*, 689 F.3d at 60.

### 4. Video 4 (Swindelles's "Short 2" of Episode 740)

Video 4 was created by Defendant and posted on YouTube by Defendant. AUF, ¶¶ 37, 39. Defendant identically copied 0:53 of audio-visual content and additionally 1:11 of visual content from Episode 740 into Video 4, which has a total duration (not including the logo introduction) of approximately 2:04 (i.e., 100 percent of Video 4 is made up of Episode 740). AUF, ¶ 54. During the clip of Episode 740, the hosts discuss Mr. Schaub's upcoming episode of the "Fight Companion" show in which the hosts discuss a live UFC fight.[4]

---

[3] For example, the host discuss the efficacy of the vaccine, vaccine mandates, lockdown policies, natural antibodies to COVID, horse dewormer, personal freedom, the War on Terror, and the rise of video cameras, GPS tracking, and facial recognition, including its use in China. AUF, ¶ 50.

[4] For example, Schaub announces the lineup for the show: Schaub, Callen, Chris D'Elia, and Josh Thomson. AUF, ¶ 55. Schaub explains that show will be "hilarious" because D'Elia

Defendant stops the audio-visual portion of Episode 740 (while the visual portion remains) and provides a voice-over, the content of which Defendant admits had nothing to do with either the copyrighted Work or any connection with the contents of the 1:09 visual segment from Episode 740.  AUF, ¶ 56.  As to the audio-visual potion, Defendant provides a general summary of what was stated, that it will be "interesting," and that "he can't wait for this," all without explaining why.  AUF, ¶ 56.

Defendant offers no compelling justification for copying Plaintiffs copyrighted works. He does not target those works for commentary or criticism in his videos, and to the extent Defendant comments on the content of Plaintiff's works (which does not justify copying Plaintiff's works (*Warhol,* 143 S. Ct. at 1285)), such comments are vague, superficial, and narrative in style.  These do not constitute "real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon" as required.  *Gregory*, 689 F.3d at 60. Defendant could have announced the lineup of the upcoming show and said it would be "interesting," without playing the Work itself.

**Commerciality**

As to commerciality, both *Warhol* and § 107(1) make clear that the question is "whether such use is of a commercial nature or is for nonprofit educational purposes."  *Warhol,* 143 S. Ct. at 1274 (quoting 35 U.S.C. § 107(1)).  Defendant concedes that his use was "commercial" in nature.  MSJ, 4.  He admitted in deposition that he monetized each of the Infringing Videos on his two YouTube channels.  AUF, ¶ 57.  During the relevant time, Defendant's channels generated $13,629.86 in advertising revenue.  AUF, ¶ 64.  Moreover, Defendant undoubtedly sought traffic to his channels and recognition, in addition to the revenue he received.  In *Comerica*, the court found that the first factor weighed "decisively" against fair use, where the defendant "sought to drive traffic to his YouTube channel" and gain personal recognition, even

---

"knows nothing about fighting."  *Id.*  Schaub and Callen further discuss D'Elia's opinions on one UFC fighter, Israel Adesanya.  *Id.*

though he never received any ad revenue from his YouTube videos. *Comerica*, 433 F. Supp. 3d at 93-94. Here, Defendant received revenue, traffic, and recognition.

With respect to each of the Videos, Defendant has failed to demonstrate that Defendant's uses of the Works were transformative and concedes their use was commercial. Defendant has thus failed to prove that the first factor weighs in favor of fair use as a matter of law as to each of the Infringing Videos.

### B.    Nature of the Copyrighted Works

The second factor requires the court "to consider two elements: (1) whether the [original works] are factual or creative, and (2) whether the [original works] have previously been published." *Gregory*, 689 F.3d at 61; 17 U.S.C. § 107(2).

First, Defendant admits in his MSJ that the Original Works are creative. MSJ, 17.

Second, each of the Original Works are unpublished because copies have not been distributed to the public—they have only been publicly performed. *See* Allen Decl. (ECF No. 49-1), ¶ 18; 17 U.S.C. § 101 ("'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. … A public performance or display of a work does not of itself constitute publication."). "[T]he unpublished nature of a work is a key, though not necessarily determinative, factor tending to negate a defense of fair use." *Harper & Row*, 471 U.S. at 561 (internal quotation marks and brackets omitted). "Under ordinary circumstances, the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use." *Id.* at 555.

With respect to each of the Infringing Videos, because Defendant concedes that the Works are creative and is silent as to them being unpublishing (MSJ, 17), Defendant has failed to prove that the second factor weighs in favor of fair use as a matter of law.

### C.    Amount and Substantiality of the Portion Copied

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Gregory*, 689 F.3d at 62; 17 U.S.C. § 107(3). Taking "identical or near-verbatim copies," even though a part of larger materials, "may be qualitatively

significant" when the copying takes "the heart" of the work. *Id.* (citing *Harper & Row*, 471 U.S. at 564-66). Importantly, a copier may not take "more than necessary to further the purpose and character of the use." *Monsarrat*, 28 F.4th at 324.

Here, Defendant engaged in verbatim copying of long portions of the Works relative to the length of Defendant's Infringing Videos. As discussed above:

(1) Defendant identically copied over *seven-and-a-half* straight minutes of audio-video content from Episode 725 into his nine-and-a-half-minute Video 1 (78.2%) (AUF, ¶ 44);

(2) Defendant identically copied nearly *nine* straight minutes of audio-visual content from Episode 729 into his less than eleven-and-a-half-minute Video 3 (78.5%) (AUF, ¶ 49);

(3) Defendant identically copied 0:39 of audio-visual content and additionally 1:00 of visual content from Episode 726 into his 1:47 Video 2 (91.6%) (AUF, ¶ 47); and

(4) Defendant identically copied 0:53 of audio-visual content and additionally 1:11 of visual content from Episode 740 into his 2:04 Video 4 (100%) (AUF, ¶ 54).

As discussed above in connection with factor 1, most of the footage that was copied was completely unrelated to Defendant's superficial narrative. Moreover, Defendant's superficial comments reveal that he took the most interesting, or heart, of the copyrighted Works. AUF, ¶ 56 (Defendant announcing that the video will be "very, very interesting"). Defendant's motion presents no evidence to the contrary. For example, for Video 2, Defendant admitted that he did not parse out what was said on Episode 726 or why his comments mattered. AUF, ¶ 48. Thus, with respect to each of the Infringing Videos, Defendant copied "more than necessary to further the purpose and character of the use." *Monsarrat*, 28 F.4th at 324.

Defendant's motion contends that this factor weighs in favor of fair use because the total length of the copyrighted works spans over six hours, and that "a few minutes taken from six hours is entirely reasonable." MSJ, 18. Defendant's motion spends many pages discussing the other copyrighted material that he did *not* copy. MSJ, 7-8, 9-10, 11-12, 14-15. But "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Harper & Row*, 471 U.S. at 565. Defendant thus fails to apply the proper inquiry. Defendant also ignores

the qualitative aspect of what Defendant copied. Indeed, *Harper* made clear that "the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Id.* at 565. *Harper* found against fair use where the published article included "verbatim quotes of the author's original language totaling between 300 and 400 words and constituting some 13% of The Nation article." *Id.* at 548-49.

Other courts, including the First Circuit, have rejected similar arguments that an infringing work is fair use because it has a smaller duration or volume as the original. *See Gregory*, 689 F.3d at 62 (rejecting argument by the infringer that he had only copied *one of seventy-seven* homilies from a religious text); *Comerica*, 433 F. Supp. 3d at 95 (rejecting argument that use was fair because YouTube videos only ran 17 minutes, but the copyrighted works spanned a total of 6 hours).

With respect to Videos 1 and 3, Defendant's argument fails for a separate reason. Defendant ignores the fact that Plaintiff created and uploaded to YouTube much shorter highlight clips from both Episodes. "Highlight Clip 1" from Episode 725 has a duration of 10:03, and other than approximately the first 2:20, substantially all of Highlight Clip 1's audio-visual content is incorporated into Video 1. AUF, ¶ 71. "Highlight Clip 2" from Episode 729 has a duration of 7:01, and all of Highlight Clip 2's audio-visual content is incorporated into Video 3. AUF, ¶ 72. Accordingly, even applying Defendant's inaccurate inquiry, Defendant copied 7.5 minutes from Highlight Clip 1's 10-minute work (which is an abridgement and derivative of Episode 725), and Defendant copied ***all*** of Highlight Clip 2 (which is an abridgement and derivative of Episode 729).

With respect to each of the Videos, Defendant has failed to prove that the third factor weighs in favor of fair use as a matter of law.

### D.    Effect on the Potential Market for the Copyrighted Work

The fourth factor requires consideration of "both (1) the degree of market harm caused by the alleged infringer's actions, and (2) whether unrestricted and widespread conduct of the sort

engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Gregory*, 689 F.3d at 64; 17 U.S.C. § 107(4).

Defendant, "as the proponent of the affirmative defense of fair use, must bring forward favorable evidence about relevant markets." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022); *Campbell*, 510 U.S. at 590 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."); *Vil v. Poteau*, No. 11-CV-11622-DJC, 2013 WL 3878741, at *6 (D. Mass. July 26, 2013) ("[I]t is the defendant's burden to present evidence of relevant markets that is favorable to its defense"). Further, to negate fair use, Plaintiff "need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *McGucken*, 42 F.4th at 1163.

Defendant provides no evidence about relevant markets. Instead, Defendant miscites authority and claims that there can be no effect on the market because the Infringing Videos are criticism. MSJ, 18-19. First, the criticism has to target *the copyrighted work*, not its contents. *Campbell*, 510 U.S. at 580 (If "the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger."). Defendant is criticizing the persons that appear and the topics discussed *within the video*. *See Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles.") (emphasis original); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 406 n.6 (S.D.N.Y. 2016) ("Defendant confuses the situation in which the *photograph* is the story ... and the scenario present here, in which the *contents* of the photograph are of some public interest") (emphasis original).

Defendant admits that none of the Infringing Videos comments on or have any critical bearing on the Works. Second, Defendant's superficial voice-overs do not constitute commentary or criticism because they were not "real, substantial condensation of the materials."

While Supreme Court in *Campbell* acknowledged that there was no derivative market for works critical *of the song Pretty Woman*, "we have, of course, been speaking of the later work as if it had nothing but a critical aspect (i.e., 'parody pure and simple')." *Campbell*, 510 U.S. at 592 (cleaned up). Even if the Infringing Videos are considered critical works of the originals, if they have "effects not only in the arena of criticism but also in protectible markets for derivative works," "the law looks beyond the criticism to the other elements of the work . . . ." *Id.* The Court considered 2 Live Crew's song not only a parody but also rap music, finding that "[e]vidence of substantial harm to [the derivative market for rap music] would weigh against a finding of fair use, because the licensing of derivatives is an important economic incentive to the creation of originals." *Id.* at 593.

In fact, there is a real (not just potential) derivative market for Plaintiff's episodes of his podcast. Plaintiff has other channels on YouTube, including a channel titled "TFATK Clip Channel Highlights," in which segments of *The Fighter and the Kid* ranging on average from 2 to 12 minutes are played for those seeking highlights of the podcast. AUF, ¶ 68. Indeed, while Plaintiff has posted over 1,100 highlight clips from the episodes of his podcast, including highlight clips for each of the Episodes copied by Defendant, all or substantially all of two of those clips, Highlight Clip 1 and Highlight Clip 2, are incorporated into the Infringing Videos, thereby representing a direct harm of market substation. AUF, ¶¶ 71, 72.

Additionally, Defendant caused market harm because he earned income from YouTube for each of the Infringing Videos, even though he did not create a significant portion of the content that appears in them. AUF, ¶ 57. During the relevant time, Defendant's channels generated $13,629.86 in advertising revenue. AUF, ¶ 64. Plaintiff, who also makes income from YouTube, is entitled to the proceeds generated from his copyrighted Works. *See Comerica*,

433 F. Supp. at 95 (finding market harm where YouTube "videos plainly divert traffic away from authorized reproductions").

Further, similar actions by others would cause a substantial adverse impact on creators of original podcasts and similar media. Both the Works and the Infringing Videos appeared on YouTube in a podcast commenting about current events and social issues. These similar commercial markets weigh against a finding of fair use. Plaintiff produces highly creative, long-form podcasts on a weekly basis to discuss topics such as news, sports, and celebrities. Schaub has interviewed a variety of people, including Navy Seals, NFL players, MMA fighters, comedians, and others. ECF No. 49-18, ¶ 3. If others on YouTube could take long portions of these podcasts without consequence (in addition to the thousands of other, original podcasts on the Internet), it would discourage Plaintiff and other creators "from investing in and expending the time, effort, and resources necessary for producing works." *Gregory*, 689 F.3d at 64.

Defendant's failure to provide any evidence of relevant markets, along with Defendant's failure to address whether unrestricted and widespread conduct of the sort engaged in by him would result in a substantially adverse impact on the potential market for the Works, are fatal to Defendant's claimed defense of fair use.

**Balance of the Four Factors**

As discussed above, Defendant has not met its burden with respect to any of the four fair use factors, as a matter of law. Accordingly, Defendant has failed to show that Defendant's copying of any of the Works constitutes fair use.

## V.    <u>**CONCLUSION**</u>

Plaintiff Thiccc Boy Productions, Inc. respectfully requests that the Court reject Defendant's fair use defense, and rule as a matter of law that Defendant did not make fair use of the Works.

Respectfully submitted,
Thiccc Boy Productions Inc.

DATED: August 2, 2023

<u>*/s/ Robert E. Allen*</u>
Robert E. Allen *(Admitted pro hac vice)*
GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
(310) 553-3000
rallen@glaserweil.com

and

Travis J. McDermott (#8738)
PARTRIDGE SNOW & HAHN LLP
40 Westminster Street, Suite 1100
Providence, RI 02903
(401) 861-8217
tmcdermott@psh.com