IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THICCC BOY PRODUCTIONS, INC., | : | Case No. 1:22-cv-00090-MSM-PAS |
| Plaintiff, | : | |
| v. | : | **DEFENDANT'S REPLY** |
| | : | **TO PLAINTIFF'S OBJECTION** |
| KYLE SWINDELLES, *et al*., | : | **TO DEFENDANT'S SECOND** |
| | : | **MOTION FOR SUMMARY** |
| Defendants. | : | **JUDGMENT** |

I. <u>INTRODUCTION</u>

To be perfectly clear, Plaintiff is asking this Court to make a monumental change to copyright law and use the Supreme Court's recent *Warhol* decision to fundamentally obliterate fair use as it has existed since the Copyright Act of 1976. This proposed massive shift in law is not supported by any court or legislation. For it to happen in a case involving a *pro se* defendant and a vengeful celebrity plaintiff who has publicly admitted that copyright protection was never his main goal would be an outrageous miscarriage of justice.

The fatal flaw in Plaintiff's arguments is that they miss the big picture of how fair use should be evaluated by courts. Desperate to bombard me and the court with surgical parsings of the videos and various cherry-picked, non-controlling case law citations, they miss the point that this is a nuanced balancing analysis. Plaintiff depicts this process as as dozens of rigid and individual tests that a work must pass with 100% certainty to establish a fair use defense. That is simply not how this has ever worked. The Supreme Court in Warhol recognized this artful balancing that Plaintiff seeks to destroy:

> The fair use doctrine "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which the law is

1

> designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236 (1990) (internal quotation marks omitted). The Act's fair use provision, in turn "set[s] forth general principals, the application of which requires judicial balancing, deoending upon relevant circumstances." *Google LLC v. Oracle America, Inc.*, 59 U.S. 1183, 1196 (2021). Because these principles apply across a wide range of copyrightable material, from books to photographs to software, fair use is a "flexible" concept, and "its application may well vary depending on context." *Id.*, at __ (slip op., at 15).
> *Warhol v. Goldsmith*, No. 21-869 (*U.S.* May 18, 2023), p. 14.

Obviously, the Supreme Court does not share Plaintiff's hyper-technical, eye-of-the-needle narrow interpretation of fair use because it would unnecessarily stifle art and creativity. Defendant has thoroughly shown that his videos constitute fair use within this flexible analytical framework.

II. **PLAINTIFF MISINTERPRETS THE FAIR USE ANALYSIS BY CHERRY-PICKING A JUMBLE OF CONCEPTS FROM VARIOUS CASES AND TRYING TO COMBINE THEM INTO A NEW STANDARD OF REVIEW.**

I will do my best to address Plaintiff's often bizarre claims without merely duplicating my previous arguments. The bottom line is that Plaintiff simply gets the fair use analysis wrong, as the current law gives them no chance of success in this lawsuit.

**A. Defendant's works were transformative works of criticism and commentary.**

Defendant's works are fair use under the first factor because they add several transformative elements not present in the original works, most importantly the criticism and commentary of Kyle Swindelles. Plaintiff tries to portray Swindelles criticism and commentary as mere "voice-overs" or too insubstantial to be considered serious criticism. To support this, Plaintiff tries to to portray the following quote as the seminal controlling legal standard:

> There must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work.

Plaintiff attributes this language to the ruling in *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012), which is technically true in that the quote appears in the decision. What Plaintiff leaves out, however, is that the quote only appears in *Gregory* as a "*see also"* citation that the Court never fully uses in its fair use analysis. If the language of the quote seems oddly formalistic, it is because the quote is from **the year 1841** in the decision of *Folsom v. Marsh,* 9 F.Cas. 342, 345 (No. 4,901) (C.C.D.Mass.1841). That 19th century pre-Civil War District Court used a three-prong fair use analysis that hasn't been good law for over 47 years. Yet Plaintiff sprinkles the "substantial condensation of the materials and intellectual labor" language throughout its filing as if that is the seminal standard. It simply is not. Plaintiff uses it extensively solely to give the erroneous impression that fair use may require evidence of numerous hours, maybe even days, of painstaking editing and complicated philosophical dialectics about the content of a work. Nope. In the many years since 1841, the courts have acknowledged that even if you are making short, dumb criticism videos about some boring podcast or movie, you may still be afforded the protection of fair use. That arcane language certainly appears in *Gregory*, but its utility is minimal and is only one tiny consideration in the full, flexible fair use analysis.

  Plaintiff also misapplies *Warhol's* primary finding that the "purpose and character of the use" is the main focus of the first fair use factor. Plaintiff latches on to the Court's finding that the "new expression" of Warhol's portrait of Prince did not make it transformative, as if it helps their case. It does not; it actually supports Defendant's

3

arguments. As the evidence established, the Warhol Foundation claimed its image merely had a different message than the original photo, not that it was critical of Prince or the photo itself. In the current case, Defendant's short videos are clearly critical of the podcast he is addressing, which means that the "purpose and character of the use" is far different than the long-form podcast produced by Plaintiff.

The most shocking change in law sought by Plaintiff, however, is a new standard that fair use can **never** be claimed **in any form of media** if the use relates to the content of the original work, not the work itself. The distinction between the work itself and the content of the work is a standard that courts use to evaluate fair use for *photographs*. This makes sense since the copyright protected value of a photograph lies solely in the way the subject or landscape is depicted, not necessarily in the physical or digital format of the photo. This analysis drives the *Warhol* decision because the Court had to compare two photographic depictions of the same person used for the same purposes. Other courts have also used this analysis when determining fair use of photographs. See *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) [finding newspaper's commercial printing of nude photos of Miss Puerto Rico to be fair use because the existence of such photos was newsworthy], and *Brammer v. Violent Hues Prods, LLC*, 922 F.3d 255 (4th Cir. 2019) [finding no fair use where film festival used a cropped but otherwise untouched copy of Brammer's photo to promote its event].

To establish this "content vs. the work" standard in all forms of media would lead to devastating and outrageous results. For example, the entire concept of "book reviews" as we know it would automatically become copyright infringement. Plaintiff's standard would so choke out the art of literary criticism that a book review would only be able to

4

discuss the physical size of the book, possibly the quality of the binding, or maybe type of paper used for the pages. The same silly results would occur for video content. Critics and commentators could only discuss the format of the video (.mp4? .mov?), the lighting of the shots, or possibly the frame rate of the video. Ending criticism and commentary on the content of all media is so far beyond the aims of copyright as to be absurd. Even Plaintiff cannot remain consistent on this contention in its own filing. On page 6 of its filing, Plaintiff attempts to use case law on "reaction videos" against Defendant, citing *Hosseinzadeh v. Klein* and *Equals Three v. Jukin Media* favorably. The irony of this argument is that Plaintiff's new "content vs. the work" standard for all media would make ALL reaction videos unlawful infringements. The Kleins' video was the hosts reacting to the content of Hosseinzadeh's video, resulting in Hosseinzadeh suing because they said he was mysoginstic and out-of-touch. Similarly, Jukin Media sued Equals Three over their short reaction videos making fun of the content in Jukin's videos.[1] Both defendants prevailed on fair use, so Plaintiff's citation of these cases only illustrates how disjointed and unsupported its arguments really are.

      Further drawn-out analysis of my videos is unnecessary. This Court can compare my short criticism videos to Plaintiff's long multi-topic podcasts and see how they are obviously different. In *Reaction Video 1*, I am critical of Brendan Schaub's apology from that video, calling it incoherent and joking that Schaub might have brain damage. In *Short 1*, I criticize the TFATK hosts for their response to Ariel Helwani verbally eviscerating them on his show: I use a mocking "Schwabism," comment on how weak their response was, and give my opinion that Helwani is the winner of this dispute. In

---

[1] In an eery similarity, Jukin unsuccesfully argued that Equals Three's videos were not actually commentary, trying to parse every moment of the videos as Plaintiff in the current case does. The court was not persuaded.

*Reaction Video 2*, I give my opinion on Schaub's attack on Howard Stern, agreeing with him yet still making fun of that fact that we are on the same page and that Schaub had to "protect Bapa Rogan" (AKA Joe Rogan, the initial benefactor of Schaub's media career). In *Short 2*, I comment on the fact that an upcoming Thiccc Boy Productions show will include two hosts who recently faced allegations of sexual impropriety including rape, sexual assault, grooming of underage girls, emotional abuse, and infidelity. I give my opinions that this will be very interesting to see if they address the allegations, that the comments section will be wild, and make a mocking Schwabism. It is abundantly obvious that this is all criticism and commentary.

      Plaintiff's inclusion of long portions of my deposition are generally irrelevant or support my arguments. I cannot figure out how to find the exact portions they cite because of how they are cited in the filing (AUF?). But if you read beyond the cherry-picked, out-of-context parts they highlight , you will see that I fully explain my criticisms of TFATK. The disconnect was that the Thiccc Boy lawyers have zero knowledge of their client's shows, were completely ignorant of the context of my criticisms, and simply ignored my explanations in the deposition. Therefore, Robert E. Allen, Esq., now argues that he personally does not understand what I was talking about, and therefore that means I made no valid criticisms and copyright law in the United States must now be blown apart. I am surprised they included any of that embarrassing deposition. Did they include the parts where the lawyer messes up the playback of almost every video, calls his client "Bryan Schaub" a bunch of times, and even calls his co-counsel by my name multiple times?

### B. The generally non-determinative second fair use factor still favors Defendant despite Plaintiff's tortured portrayal of case law.

To support its arguments against the second fair use factor, Plaintiff cites *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985). In that case, Harper & Row sued *The Nation* magazine for publishing key parts of Gerald Ford's book prior to its availability to the public. Due to the premature revelations, the publisher lost a licensing agreement with *Time Magazine* to reprint portions of the book. The Court ruled against *The Nation*'s fair use defense, noting that "the author's right to control the first public appearance of his undisseminated expression will outweight a claim of fair use." *Id.*, at 555. Plaintiff uses this quote in reference to the right to publish a work, though it is obvious the Court was discussing something slightly different here. Harper & Row was harmed because parts of their book were disseminated prior to their release to the public, and suffered actual harm due to it. Thiccc Boy Productions, however, disseminated all of the TFATK episodes in question on YouTube for public consumption prior to any use by Defendant. We can argue about what it means to "publish" a work, but the facts show that Plaintiff retained its "right to control the first public appearance of [its] undisseminated expression" in all its works, and suffered no actual damages related to any use by Defendant.

### C. Defendant used very little of the original works and showed that the third fair use factor weighs in its favor.

The third fair use factor is absolutely devastating for Plaintiffs case, so as expected, the levels of deflecting and obfuscation in that portion of its filing are off the charts. The actual law states the third factor as "the amount and substantiality of the portion used in relation to the copyrighted work ***as a whole***." 17 U.S.C. § 107(3)

7

(emphasis added). Obviously, courts have no choice but to evaluate the accused works in relation to the entirety of the allegedly infringed works. In response to that clear legislative language, Plaintiff burns a few hundred words claiming that the court should completely ignore that language. Why? Because their vidoes are over 6 hours long as a whole, and Defendant used only minutes of each.

To make this argument, Plaintiff harps on the evils of verbatim copying and tries to establish percentages of use as the legal standard. These arguments are problematic because it is well established that verbatim copying can still be fair use, and the 1st Circuit has been adamant that simple rigid analyses of percentages used are not legally persuasive. *Nunez*, *Id*. On verbatim copying, the Supreme Court was clear that verbatim copying can constitute fair use if it is "consistent with or [no] more than necessary to further the 'purpose and character of the use.'" *Campbell*, *Id.* (quoting *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 144 (2nd Cir 1998).

Plaintiff attempts to establish a new legal standard that any miniscule use that is arguably "more than necessary" means that this fair use factor fails. The courts, however, have taken a far more flexible and nuanced approach in harmony with the goals of copyright. The law "does not, however, require that the secondary artist may take no more than is necessary." *Cariou v. Prince*, 714 F.3d 694, at 710 (2nd Cir. 2013). When discussing how much of an original work was needed to effect the critical nature of a parody song, the *Campbell* court stated:

> When parody takes aim at a particular original work, the parody must be able to "conjure up" at least enough of that original to make the object of its critical wit recognizable. See, *e. g., Elsmere Music,* 623 F. 2d, at 253, n. 1; *Fisher* v. *Dees,* 794 F. 2d, at 438-439. What makes for this recognition is quotation of the original's most distinctive or memorable features, which the parodist can be sure the audience will know. Once enough has been taken to

8

assure identification, how much more is reasonable will depend, say, on the extent to which the song's overriding purpose and character is to parody the original or, in contrast, the likelihood that the parody may serve as a market substitute for the original. But using some characteristic features cannot be avoided. *Campbell*, at 588.

Clearly, Plaintiff seeks to erase all nuance from the law, but that is simply not how the fair use analysis works.

Aside from *Campbell*'s acknowledgment that verbatim copying can be fair use, the 2nd Circuit has bluntly ruled:

> [C]ourts have concluded that such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image. *See Kelly,* 336 F.3d at 821 (concluding that images used for a search engine database are necessarily copied in their entirety for the purpose of recognition); *Nunez v. Caribbean Int'l News Corp.,* 235 F.3d 18, 24 (1st Cir. 2000) (concluding that to copy any less than the entire image would have made the picture useless to the story). Adopting this reasoning, we conclude that the third-factor inquiry must take into account that the "the extent of permissible copying varies with the purpose and character of the use." *Campbell,* 510 U.S. at 586-87, 114 S.Ct. 1164.
> *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, at 613 (2nd Cir. 2006).

Plaintiff is seeking another major shift in the law on fair use with its analysis. The fact is that verbatim copying must be subjected to the same flexible analysis of any of the other fair use factors, not Plaintiff's rigid personal preferences. See also *Hughes v. Benjamin*, 437 F. Supp. 3d 382 (S.D.N.Y. 2020) [ruling a Youtube video as fair use when that video simply edited the sequence of 20% of the original video with no added audiovisual content], and *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) [finding verbatim copies of thumbnail images as fair use due to the differing purpose of their use].

On a final note, Plaintiff attempts to argue that Defendant's videos use more than necessary because the hosts on TFATK jump around to different topics in their discussions. TFATK is a long-form, mostly unscripted podcast where the hosts are often

9

seen consuming alcohol and nicotine pouches. Host Brendan Schaub publicly admitted in February of 2023 that he had previously been abusing mixed amphetamine salts (commercially known as Adderall).[2] Naturally, an open-format discussion between three comedians who may or may not be on various intoxicating substances will be disgressive and disjointed at times. As noted in Plaintiff's second MSJ, the hosts often wander away from a topic and then eventually come back to it. That Defendant may have included some of these wanderings while trying to capture the entire conversation on a topic does not render his videos beyond fair use.

### D. Defendant has firmly established the lack of market harm.

Defendant has already established that his critical videos had no effect on the potential market for TFATK podcasts. Plaintiff now presents "highlight clips," yet another piece of evidence hidden from the Court and Defendant for over a year but now presented as a dud of a "gotcha" tactic. Plaintiff did not provide information on these videos prior to its filing, and appears to not provide copies of these videos, but has someone describing the videos in an affidavit. Aside from the fact that this is inadmissible hearsay, it is irrelevant as well. My videos are criticism and commentary, not "highlight videos" of TFATK. Plaintiff is seeking to establish a derivative market for TFATK episodes to use against me, but the Supreme Court in *Campbell* made clear that there is no protectible derivative market for works of criticism such as mine.

Plaintiff again tries to establish its new "content vs. the work" legal standard for criticism. This time, Plaintiff quotes a portion of *Campbell* discussing the "substance or style" of an original song. So in sum, Plaintiff claims that criticism videos are not criticism videos unless they solely address the "substance or style" of the original video,

---

[2] https://open.spotify.com/episode/3WTJODADj0xCwF609nhKmd

not any of its contents. Is the "substance" of a video not the people in it and what they are saying? If not, this is just another attempt by Plaintiff to make practically ALL criticism videos unlawful. Obviously, the *Campbell* court was specifically addressing how this applies to a song, not a video. Plaintiff can keep desperately trying to cram this square peg into a round hole, but it is entirely unpersuasive and would fundamentally re-write copyright law.

## CONCLUSION

This case presents no genuine issues of material fact for the court or a jury to decide, and summary judgment for defendant is a common way for this type of case to end. The balancing of the four factors support Defendant's use of the works as fair use, and Plaintiff has failed to substantively counter any of his assertions. In fact, Plaintiff's arguments amount to an outright assault on current United States copyright law. For the foregoing reasons, Defendant respectfully requests that this Court grant summary judgment for Defendant Kyle Swindelles.

Respectfully submitted,

*Kyle Swindelles*

Kyle Swindelles, Defendant, *pro se*
41 Marietta Street, 2nd Floor, Unit 4
Providence, Rhode Island 02904
Phone: (401) 230-5061
e-mail: yewneekent@gmail.com