IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THICCC BOY PRODUCTIONS INC.<br><br>Plaintiff,<br><br>v.<br><br>KYLE SWINDELLES a/k/a YEW NEEK NESS; and DOES 1 through 10,<br><br>Defendants. | Case No. 1:22-cv-00090-MSM-PAS<br><br>**PLAINTIFF THICCC BOY PRODUCTIONS INC.'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT** |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................6

II. LEGAL STANDARD..............................................................................................6

III. PLAINTIFF HAS MET ITS BURDEN OF PRESENTING GROSS REVENUES. ........10

IV. DEFENDANT HAS NOT MET HIS BURDEN OF SHOWING COSTS OR APPORTIONMENT..............................................................................................12

V. FAIR USE DEFENSE ..........................................................................................16

VI. CONCLUSION.....................................................................................................18

2321403

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andreas v. Volkswagen of Am., Inc.*,
  336 F.3d 789 (8th Cir. 2003) .................................................................................. 7, 13, 16

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  143 S. Ct. 1258 (2023) ..................................................................................................... 17

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ..................................................................................... 10, 12

*Bruce v. Weekly World News*,
  310 F.3d 25 (1st Cir. 2002) .......................................................................................... 7, 9

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ......................................................................................................... 17

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ............................................................................................ 18

*CMM Cable Rep. v. Ocean Coast Props., Inc.*,
  888 F. Supp. 192 (D. Me. 1995) ....................................................................................... 9

*Comerica Bank & Tr., N.A. v. Habib*,
  433 F. Supp. 3d 79 (D. Mass. 2020) ............................................................................... 17

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994) ............................................................................. 7, 8, 9, 11

*ECIMOS, LLC v. Carrier Corp.*,
  971 F.3d 616 (6th Cir. 2020) ....................................................................... 9, 10, 12, 16

*Equals Three, LLC v. Jukin Media, Inc.*,
  139 F. Supp. 3d 1094 (C.D. Cal. 2015) ......................................................................... 17

*Folsom v. Marsh*,
  9 F. Cas. 342 (No. 4,901) (C.C.D. Mass. 1841) ........................................................... 17

*Frank Music Corp. v. Metro–Goldwyn–Mayer, In*c.,
  772 F.2d 505 (9th Cir. 1985) ..................................................................................... 7, 11

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ........................................................................................ 18

*Harper & Row Publrs. v. Nation Enters.*,
  471 U.S. 539 (1985) ......................................................................................................... 13

*In Design v. Lauren Knitwear Corp.*,
  782 F. Supp. 824 (S.D.N.Y. 1991) ................................................................................. 16

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*,
   322 F.3d 26 (1st Cir. 2003) .................................................................................. 7, 9, 13

*Li v. Affordable Art Co.*,
   No. 12-cv-03523, 2014 WL 11862795 (N.D. Ga. Feb. 26, 2014) ......................... 15

*Liberty Media Holdings, LLC v. Vinigay.com*,
   No. 11-cv-280, 2011 WL 7430062 (D. Ariz. Dec. 28, 2011) ................................. 15

*Liberty Media Holdings, LLC v. Vinigay.com,*
   No. 11-cv-280, 2012 WL 641579 (D. Ariz. Feb. 28, 2012) ................................... 15

*Monroig v. RMM Records & Video Corp.*,
   196 F.R.D. 214 (D.P.R. 2000) ................................................................................ 7, 9

*Netdragon Websoft, Inc. v. Toft*,
   No. 11-cv-1037, 2012 WL 13008123 (C.D. Cal. Apr. 24, 2012) .......................... 15

*On Davis v. Gap*,
   246 F.3d 152 (2d Cir. 2001) ................................................................................. 10, 12

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ...................................................................................... 13

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ........................................................................................................ 7

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
   309 U.S. 390 (1940) ...................................................................................................... 13

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012) ........................................................................................ 17

*Taylor v. Meirick*,
   712 F.2d 1112 (7th Cir. 1983) ................................................................................... 12

*Torres v. E.I. Dupont De Nemours & Co.*,
   219 F.3d 13 (1st Cir. 2000) ........................................................................................ 14

*Updatecom, Inc. v. Firstbank P.R., Inc.*,
   2013 WL 12234631 (D.P.R. June 19, 2013) ............................................................ 9

*Williams v. Arndt*,
   626 F. Supp. 571 (D. Mass. 1985) ...................................................................... 14, 15

**STATUTES**

17 U.S.C. § 504 .................................................................................................................. 7

17 U.S.C. § 512 ................................................................................................................ 16

28 U.S.C. § 1746 ............................................................................................................. 14

2321403

**OTHER AUTHORITIES**

Copyright Act, Section 504(b) ......................................................................................... 6, 8, 9, 10

2321403

## I. INTRODUCTION

There are three main issues raised by the parties' summary judgment briefing: (1) infringement, (2) fair use, and (3) damages. Plaintiff Thiccc Boy Productions Inc. ("Plaintiff") moved for summary judgment on infringement and damages (ECF No. 49, "PMSJ"). Defendant Kyle Swindelles ("Defendant") moved for summary judgment on fair use (ECF No. 47). Defendant's fair use defense is meritless, and the Court should find that Defendant did not meet his burden of showing fair use of the Works, for the reasons discussed in Plaintiff's Opposition (ECF No. 51).

Defendant's Opposition (ECF No. 54, the "Opposition")[1] to Plaintiff's motion for summary judgment does not address the issue of infringement, thereby conceding that Defendant copied the Works without authorization. Instead, the Opposition focuses only on damages, claiming, without any supporting evidence and based only Defendant's "recollections," that Plaintiff is entitled to no more than $304. As explained below, to recover infringer's profits, the Copyright Act only requires that a plaintiff present the infringer's gross revenue. Plaintiff has met its burden. Defendant, who bears the burden of showing which portion of his profits are *not* attributable to the infringement, has failed to provide any supporting evidence or documentation for his claims. And his claims are contradicted by actual evidence in the record. Defendant's lack of evidence is not the fault of Plaintiff's actions, but his own.

## II. LEGAL STANDARD

As discussed in the PMSJ, Section 504(b) of the Copyright Act sets forth that a copyright owner is entitled to the infringer's profits and need present proof "only of the infringer's gross revenue"; the infringer is then required to prove expenses and the portion of profits "attributable

---

[1] Defendant's Opposition was due on August 15, 2023, but was filed two days later, on August 17, 2023. The Court granted Defendant's motion to excuse the late filing without allowing Plaintiff an opportunity to respond. Defendant claimed that he could not file his brief on time because he was busy with childcare responsibilities. However, Defendant has admitted that he does not write or prepare his briefs, and instead, uses a ghost-writer to do this work for him. Ex. 17, 142:7-143:11. Moreover, from August 9 to August 16, Defendant had the time to create and post 10 videos to YouTube, including at least 7 videos addressing Brendan Schaub. *See* Ex. 21 (https://www.youtube.com/@YewNeekEnt/videos).

2321403

to factors other than the copyrighted work." 17 U.S.C. § 504(b).

The First Circuit has interpreted the burdens set forth in this statute exactly as they read, holding that "[t]he copyright owner needs only to present evidence of the infringer's gross revenues; the burden is then on the defendant to show how much of its revenues are profits, and what 'elements of profit are attributable to factors other than the copyrighted work.'" *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 47 (1st Cir. 2003) (involving four copyrighted architectural plans showing the layout and rendering of a condominium subdivision, and gross revenues totaled nearly $20 million, equal to the "the sale of [] 70 condominium units"). While a copyright plaintiff's claim cannot be "unduly speculative," they "need not provide nonduplicative profits with mathematical certainty." *Bruce v. Wkly. World News, Inc.*, 310 F.3d 25, 31 (1st Cir. 2002). "Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff." *Monroig v. RMM Records & Video Corp.*, 196 F.R.D. 214, 219 (D.P.R. 2000) (citing *Frank Music Corp. v. Metro–Goldwyn–Mayer, In*c., 772 F.2d 505, 514 (9th Cir. 1985)); *accord Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003).

First Circuit precedent confirms that "no further proof [is] required" once the plaintiff presents evidence of the defendant's gross revenues, at which point a rebuttable presumption arises that the defendant's revenues are entirely attributable to the infringement. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1173-74 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

In *Data General,* the plaintiff sought infringer-profits from the defendant's servicing of computers using the plaintiff's computer program. *Id.* at 1157-58. The defendant infringed plaintiff's ADEX software, which was used to diagnose MV computers. *Id.* at 1154. The plaintiff introduced evidence of the defendant's gross revenue from its entire MV-related business during the relevant period. *Id.* at 1174. The defendant contended that the plaintiff failed to identify relevant revenues because the plaintiff included that portion of defendant's profits that was not

7

attributable to defendant's use of ADEX—revenues that were derived from servicing computers that cannot or need not be serviced with ADEX. *Id.* at 1157-58. The First Circuit disagreed.

The First Circuit specifically addressed what the plaintiff had to prove to meet its burden under section 504(b): "In the context of infringer's profits, the plaintiff must meet only a *minimal burden* of proof in order to trigger a rebuttable presumption that the defendant's revenues are *entirely* attributable to the infringement; the burden then shifts to the defendant to demonstrate what portion of its revenues represent profits, and what portion of its profits are not traceable to the infringement." *Id.* at 1173 (emphasis added). Once the plaintiff introduced evidence of defendant's gross revenue from the defendant's MV computer servicing business during the relevant time period, plaintiff had no obligation to demonstrate a connection between the defendant's infringement and the gross revenue number presented. To the contrary, the First Circuit expressly stated that "no further proof was required." *Id.* at 1174. In other words, the plaintiff's "minimal burden" was "to present proof only of the infringer's gross revenue" under section 504(b), which the plaintiff had met. *Id.* at 1173-74.

*Data General* establishes that the burden created by section 504(b) on showing a relationship between the presented gross revenues and the infringement is a burden on the infringer-defendant "to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff." *Id.* at 1175. Indeed, *Data General* further emphasized that the rebuttable presumption of causation that all of the defendant's gross revenues introduced by plaintiff are profits "represents a presumption as to both cause-in-fact and proximate cause." *Id.* The court confirmed that "questions of causation" are addressed during the apportionment analysis, which is part of the defendant's burden, not the plaintiff's. *Id.* at 1176. In short, *Data General* recognized that placing only a minimal burden on copyright plaintiffs is fair and equitable because (1) infringer-defendants are in a much better position to prove what portions of their revenue are not related to the infringement and (2) if they cannot do so, defendants should have to bear the consequences. *Id.*

2321403

Subsequent decisions by the First Circuit have reiterated that a copyright plaintiff's initial burden is only to introduce proof of an infringer's gross revenue. *Bruce v. Weekly World News*, 310 F.3d 25, 31 (1st Cir. 2002); *Danielson*, 322 F.3d at 47. District courts in this Circuit have confirmed that plaintiff's burden under section 504(b) is satisfied solely by placing defendant's gross revenues into evidence. *See Monroig*, 196 F.R.D. 214 at 219; *CMM Cable Rep. v. Ocean Coast Props., Inc.*, 888 F. Supp. 192, 199 (D. Me. 1995). One district court specifically rejected the argument that the First Circuit requires a plaintiff to prove a connection between infringement and profits. *Updatecom, Inc. v. Firstbank P.R., Inc.*, 2013 WL 12234631, at *1 (D.P.R. June 19, 2013) ("Despite the language of the statute, many courts have held that simple proof of gross profits is insufficient to trigger the burden when those profits have no rational connection to the infringement; instead, the plaintiff must also demonstrate 'some nexus between infringement and profits' before the burden shifts to the defendant. … Notably, the First Circuit is not one of these courts.") (citing *Data Gen.*, 36 F.3d at 1173-74)).

After reviewing its own precedent, the Sixth Circuit arrived at the same interpretation of section 504(b) as the First Circuit. In *ECIMOS, LLC v. Carrier Corp.*, the plaintiff sued the defendant for infringing its copyright by using its database source code to aid a third party's development of software that the defendant employed at one of its manufacturing facilities. 971 F.3d 616, 622 (6th Cir. 2020). The defendant objected to plaintiff's presenting all of its gross revenue from that facility (more than $1.25 billion) and argued that the plaintiff was "required to show the amount of [Defendant's] profits that were attributable to the infringement." *Id.* at 634. The Sixth Circuit rejected the defendant's argument: "Put simply, the burden is on the copyright *infringer* to prove whatever portion of its gross revenue was not attributable to the" infringement. *Id.* In so holding, the Sixth Circuit addressed the confusion surrounding the word "attributable" in the statute:

> The phrase "attributable to" appears twice in the statute: First, the statute provides that a copyright owner is "entitled" to recover only those profits that are "attributable to" the infringement of its copyrighted material. ***The final sentence of the statute explains that the burden of proving which portions of that gross revenue are "attributable to" or not attributable to the infringement is on the infringer—not the copyright owner***. "Where there is a commingling of gains, [the

9

defendant] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him."

*Id.* (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 768-69 (6th Cir. 2012)) (emphasis by the *ECIMOS* Court).

Defendant argues that this court should ignore First Circuit precedent and apply the standard in the Second Circuit instead. The Second Circuit requires the plaintiff to show that the revenues are "reasonably related" to the infringement. In *On Davis v. Gap*, the defendant infringed the plaintiff's copyrighted eyewear in an advertising campaign for Gap clothing. The plaintiff submitted evidence of the gross revenues of Gap's corporate parent. In denying infringer's profits, the Second Circuit stated: "Because the ad infringed only with respect to Gap label stores and eyewear … it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories." 246 F.3d 152, 160 (2d Cir. 2001). Importantly, the Second Circuit made clear: "*Had he done so, the burden would then have shifted to the defendant* under the terms of § 504(b) to prove its deductible expenses and elements of profits from those revenues attributable to factors other than the copyrighted work." *Id.* (emphasis added). The Second Circuit clarified that "gross revenue" means gross revenue reasonably related to the infringement, and not from separate, unrelated lines of business.

### III.   PLAINTIFF HAS MET ITS BURDEN OF PRESENTING GROSS REVENUES.

Plaintiff has met its burden under First Circuit precedent. Even applying the Second Circuit standard, however, Plaintiff would have met its burden. Defendant's infringement consisted of identically copying large portions of Plaintiff's videos and then posting and monetizing them on YouTube. DSUF ¶¶ 20, 23, 26, 29; PSUF ¶¶ 13, 26-33. Plaintiff uploaded the Works to YouTube on September 7 (Episode 725), September 8 (Episode 826), September 20 (Episode 729), and October 25, 2021 (Episode 740). DSUF ¶¶ 9, 11, 13, 15. Defendant confirmed that he posted the Infringing Videos in September and October 2021. That is, Defendant testified that he posted each of them within a few days after Plaintiff's Works were uploaded. Ex. 17, 62:16, 64:15-24, 86:19-24, 92:13-15, 109:6-11, 111:18-19, 130:3-5. This

timing makes sense given that Defendant was attempting to provide topical commentary on what had just happened on *The Fighter and the Kid* podcast.[2] The timing is confirmed by Defendant's unambiguous statements in the Infringing Videos.[3]

Defendant further confirmed that he was paid monthly by YouTube in advertising revenue for the Infringing Videos, on the 21st of the month, for views occurring in the previous month. Ex. 17, 138:4-22. The Infringing Videos were taken down from YouTube on February 15 and 16, 2022, the dates he received DMCA takedown notices. DSUF ¶ 5.

The only gross revenue presented is from the one line of business from one vendor (Google)—Defendant's ad revenue from the exploitation of videos on YouTube—and only includes the income received for views of Defendant's videos from September 2021 to February 2022 (the "Time Period"). For example, although Defendant produced records that showed he received $1,825.66 in revenue from the videos on September 21, 2021, Plaintiff excluded that amount from the presented gross revenues because such revenue was for views that occurred in August 2021—before the posting of the Infringing Videos. PSUF ¶¶ 27-33. Defendant confirmed that he received $13,629.86 in revenue from the views of his videos, including the Infringing Videos, during the Time Period. PSUF ¶ 33. This is analogous to the presentation of gross income accepted by various appellate courts, both in the First Circuit and others:

- *Data General*, 36 F.3d at 1173-74 (gross revenue for entire line of computers, regardless of whether they were serviced by infringing software);

- *Frank Music*, 772 F.2d at 514 (in case involving several infringing songs in musical

---

[2] Defendant's Opposition falsely contends that the Infringing Works "were deactivated and demonetized prior to payment." Opposition, 6. In the same paragraph, Defendant admits that the Infringing Videos "appeared" over a "five-month period" "(September 2021-January 2022)." *Id.* In fact, the Infringing Videos appeared over a six-month period, from September 2021 to February 2022, for which Defendant admits he was paid. PSUF ¶¶ 26-33.

[3] In one of the videos, he states that he is discussing the "latest" episode of *The Fighter and the Kid*. The episode in question (Episode 729) was posted on September 20, 2021, and the next episode (Episode 730) appeared on September 22, 2021. Ex. 20. Thus, Defendant must have posted the infringing video prior to the posting of Episode 730 on September 22, 2021. In another video, he discussed an upcoming show called *Fight Companion* that will appear "on Saturday" and he "wonders" what the hosts will discuss. The *Fight Companion* episode took place on October 30, 2021, so Defendant must have posted his video prior to that date. Ex. 19.

2321403

revue, affirming gross revenues of over $24 million, the amount of revenue received by the casino from the *entire revue* during the time period);

- *Balsley*, 691 F.3d at 768-69 (gross revenue from magazine issue was reasonably related to infringement of a single photograph in magazine, even though other articles and photographs appeared; *plaintiff had no burden to attribute revenue to photograph versus other non-infringing photographs and material in magazine*); and

- *ECIMOS*, 971 F.3d at 622 (gross revenue for the entire manufacturing facility when the computer code was used).

Accordingly, the gross revenues presented here are reasonably related to the infringement of the Works.

This point is confirmed by the caselaw cited in Defendant's Opposition. In *Davis*, cited by Defendant, the Second Circuit found that the plaintiff's presentation of gross revenue was too broad because it included the revenues of the corporate parent, not the label stores or just the category of eyewear. 246 F.3d at 160. Defendant also cites *Taylor v. Meirick*, a Seventh Circuit decision, but there the plaintiff included other lines of businesses (pH meters) in its calculations that were far removed from the infringing maps at issue. 712 F.2d 1112, 1122 (7th Cir. 1983). The Seventh Circuit further stated: "If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Id.* Plaintiff did not put a copy of Defendant's tax return in the record and rest its case. Instead, Plaintiff put the most granular level of information available regarding the income Defendant received related to his infringement of the Works and limited to the time period during which the Infringing Works generated revenue.

IV. **DEFENDANT HAS NOT MET HIS BURDEN OF SHOWING COSTS OR APPORTIONMENT.**

Defendant argues that Plaintiff cannot present all of Defendant's gross profits "from every source." Opposition, 3. But that is not what Plaintiff did—Plaintiff only presented

12

Defendant's revenue from *one* source and from one vendor—YouTube for the payment of advertising revenue generated from his two channels containing the Infringing Videos during the Time Period. That is all that is required, in the First Circuit, in the Second Circuit, and other circuits as well.

Defendant states that Plaintiff "asks the Court to ignore that the law requires damages to be at least reasonably "attributable to the infringement."" Opposition, 2. That is Defendant's burden, not Plaintiff's. *Danielson*, 322 F.3d at 47 ("the defendant to show how much of its revenues are profits, and what 'elements of profit are attributable to factors other than the copyrighted work.'"); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, at 712-13 (9th Cir. 2004) ("Under § 504(b), [the plaintiff] was not required to separate the gross profits resulting from the infringement from the profits resulting from other sources").

The Supreme Court "has held that an infringer who commingles infringing and noninfringing elements 'must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.'" *Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539, at 567 (1985) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, at 406 (1940)). Here, Defendant comingled his revenue from the Infringing Videos with his other videos. To recover defendant's profits when, as here, the Defendant has combined gross revenue from both infringing and noninfringing videos, Plaintiff need demonstrate only a reasonable relationship between the videos as a group and defendant's profit, *not* between the specific infringed Videos and defendant's profit. This instruction is consistent with Supreme Court precedent that "the defendant, being responsible for the blending of the lawful with the unlawful, had to abide the consequences" unless "he can make a separation of the profits so as to assure the injured party all that justly belongs to him." *Sheldon*, 309 U.S. at 401, 406. Because Plaintiff has met its burden, and Defendant has not, "the gross figure stands as the defendant's profits." *Andreas*, 336 F.3d at 797.

Thus, it is Defendant's burden, not Plaintiff's, to apportion the income resulting from the infringement from other income. Defendant has no evidence regarding what portion of his

13

revenue represents profits or what portion of his profits are not attributable to the infringement. PSUF ¶ 42. Defendant has no evidence regarding the number of views the Infringing Videos received, or the amount of revenue individually received for each of these videos. PSUF ¶ 34. Nor does Defendant present any evidence of "deductible expenses." *Id.*

Defendant's "Statement of Kyle Swindelles" (Opposition, Exhibit C, the "Statement") claims that the average income he received per video was $16 per month. But the Statement is "completely unsupported, [was] prepared for use in this litigation and, in short, [is] completely unreliable." *Williams v. Arndt*, 626 F. Supp. 571, 582 (D. Mass. 1985) (finding that the infringer had failed to prove any deductible expenses and awarding full gross revenue to the plaintiff). As an initial matter, the Statement is not a proper affidavit signed under penalty of perjury as required by 28 U.S.C. § 1746. But, even putting that aside, the Statement is inconsistent with actual evidence in this case, including his sworn deposition testimony. "It is settled that when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000).

In deposition, Defendant testified that he does not know how many videos were on his channels before they were taken down, nor how many views any of the videos received before being taken down. Defendant also confirmed that he did not have any records of such information. Ex. 17, 15:16-17, 121:15-18, 141:6-21. Moreover, Defendant, while conceding that revenue "can fluctuate wildly," claims that he received an average of $16 per video per month. Statement, ¶ 11. This claim is not supported by any records or documentary evidence, and it should not been given any consideration. The Statement further claims that the Infringing Works "were deactivated and demonetized prior to any payments" because Defendant "believe[es]" the Infringing Videos were uploaded in February 2022. Statement, ¶¶ 4-8. That is false. Defendant testified that they were uploaded in September and October 2021, shortly after Plaintiff posted the Works. Ex. 17, 64:17-24 (infringing video of Episode 729); 92:12-14 (infringing video of

14

Episode 740), 111:14-19 (infringing video of Episode 725); 130:3-5 (infringing video of Episode 726). As explained above, that timing is confirmed by his statements in the Infringing Videos. Thus, Defendant received income for the Infringing Videos from September 2021 through February 2022.

In *Williams*, the infringer attempted to submit income statements for several years, but he kept "no credible records" substantiating his figures. *Williams*, 626 F. Supp. at 582 (D. Mass. 1985). The Court rejected the income statement he prepared since it was "unsupported," "prepared for use in this litigation," and "completely unreliable." The same is true here.

This case is suitable for summary judgment. Summary judgment is appropriate where, as here, the infringer presents no credible evidence of its costs or elements of profit not attributable to the infringement. *Li v. Affordable Art Co.*, No. 12-cv-03523, 2014 WL 11862795, at *2 (N.D. Ga. Feb. 26, 2014) ("defendant [] has not produced any documentation or records to support the deductible expenses figures. There is no indication these figures are reliable. … Without knowing how the alleged expenses were calculated, the court simply has no way of determining whether a nexus exists. Therefore, the court concludes defendant [] has not presented credible evidence by affirmatively showing that, on all essential elements of the case, no reasonable jury could find for the nonmoving party."). Courts routinely reject an infringer's claims regarding profits or costs where they submit no evidence in support of their contentions; *Liberty Media Holdings, LLC v. Vinigay.com*, No. 11-cv-280, 2011 WL 7430062, at *13 (D. Ariz. Dec. 28, 2011), *report and recommendation adopted*, No. 11-cv-280, 2012 WL 641579 (D. Ariz. Feb. 28, 2012) ("[D]oubts about the actual assessment of damages [awarded at a default hearing] will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably ascertainable value."); *Netdragon Websoft, Inc. v. Toft*, No. 11-cv-1037, 2012 WL 13008123, at *3 (C.D. Cal. Apr. 24, 2012) ("Defendants … have failed to offer evidence proving their deductible expenses and the elements of profit attributable to factors other than the copyrighted work. Therefore, Plaintiff is entitled to receive the full [gross revenue amount].").

Defendant complains that his inability to submit any records substantiating his beliefs was due to Plaintiff's actions in filing DMCA claims. But Plaintiff was well within its right to submit DMCA claims against Defendant; takedowns are part of the system enacted by Congress in the DMCA. 17 U.S.C. § 512(c). Moreover, YouTube explains that the analytics reports detailing revenue and performance data are only available for 60 days.[4] Thus, by the time Defendant's channels were taken down in February 2022, the reports for September and October 2021 were likely no longer available. It was Defendant's responsibility to maintain these records if he contends he is entitled to apportionment. *ECIMOS*, 971 F.3d at 635 ("Where there is a commingling of gains, the defendant must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him."); *Andreas*, 336 F.3d at 797 ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff."); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 832 (S.D.N.Y. 1991) ("any uncertainty as to profits that is caused by the defendant's failure to keep adequate records of costs will be resolved in favor of the plaintiff.").

V.   **FAIR USE DEFENSE**

In reply (ECF No. 52), Defendant has no serious defense of his fair use claims. Defendant does not address the fact that he admitted to continuing to make videos about Brendan Schaub on his new channel (Ex. 21) without using Plaintiff's content, meaning that he does not need to use Plaintiff's copyrighted works to carry out his work. Plaintiff's Opposition, 6. Nor does he dispute that the Works make up significant portions of the Infringing Videos (ranging from 78 to 100%). *Id.*, 6-10. He does not dispute that he monetized the Infringing Videos, rendering his use commercial. *Id.*, 11-12.

Instead, Defendant repeatedly falls back on his claim that the Infringing Videos were "clearly critical" of the contents of the Works, not the Works themselves. Motion, 2-6, 10-11. But Defendant completely misreads *Warhol*—it was precisely the fact that Warhol claimed to have a different message than the original that was not critical of the photograph itself that

---

[4] Ex. 18 (https://support.google.com/youtube/answer/9718397?hl=en).

factored significantly in weighing *against* fair use. "Because [Warhol's silkscreen] 'has no critical bearing on' Goldsmith's photograph, the commentary's 'claim to fairness in borrowing from' her work 'diminishes accordingly (if it does not vanish).'" *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1285 (2023) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)).

Further, as Plaintiff explained in significant detail, most of the conversations from the Works that Defendant copied are *not* discussed at all, and the few comments Defendant provides are vague and superficial. Plaintiff's Opposition, 5-11. Defendant, for example, now refers to "commentary" about alleged sexual misconduct by two hosts on the Fight Companion show. Reply, 6. But such "commentary" does not appear in that Infringing Video, as Defendant at deposition. Ex. 17, 98:21-99:2. That Defendant believes he is offering veiled criticism does not give him a free pass to copy extensive portions of the Works.

Next, Defendant contends that the analysis articulated in *Folsom v. Marsh,* 9 F. Cas. 342, 348 (No. 4,901) (C.C.D. Mass. 1841) (Story, J.) and relied upon by Plaintiff is no longer the standard in the First Circuit. Reply, 3. Wrong. That standard was applied by the First Circuit in 2012 in *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 60 (1st Cir. 2012) ("A review of [defendant's] works reflects minimal 'intellectual labor and judgment.' *Folsom*, 9 F.Cas. at 345."); *see also Comerica Bank & Tr., N.A. v. Habib*, 433 F. Supp. 3d 79, 92 (D. Mass. 2020) (quoting and applying *Folsom* to find no fair use of YouTube videos, discussed by Plaintiff, never addressed by Defendant); *see also Warhol,* 143 S. Ct. at 1274.

Additionally, Defendant contends that the requirement, articulated in *Warhol*, to comment on the work itself applies only to photographs. Reply, 4. That is incorrect. *Warhol* did not limit its analysis to photographs, and instead, discussed various forms of media, including books, songs, and movies. *Warhol*, 143 S. Ct. at 1275. Indeed, *Warhol* discussed *Campbell* extensively, the subject matter of which was two musical works. This was even recognized in a case involving **reaction videos** cited by Defendant. *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1105 (C.D. Cal. 2015) (finding no fair use where "purpose of using Jukin's

17

video was to make two general, broad points that were *not directly aimed at criticizing or commenting on the video*."). The law is clear that Defendant needed to provide commentary on the Works themselves.

Finally, Defendant's content versus the work argument is a strawman. There is plenty a critic can and do review about a copyrighted work that *is about the work*. Literary works and motion pictures are evaluated based on their protected copyright expression of their themes, characters, plot, sequence, pace, and setting. *See, e.g., Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). Defendant does not argue that he engaged in a critique of any of these—his criticism solely targets one of the hosts—which is he free to do but has no right, need or justification to use Plaintiff's copyrighted works to do so.

## VI. CONCLUSION

For the foregoing reasons, Thiccc Boy respectfully requests that the Court grant summary judgment in favor of Thiccc Boy on liability and enter judgment of $13,629.86.

Respectfully submitted,

DATED: August 24, 2023

*/s/ Robert E. Allen*
Robert E. Allen *(Admitted pro hac vice)*
GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
(310) 553-3000
rallen@glaserweil.com

and

Travis J. McDermott (#8738)
PARTRIDGE SNOW & HAHN LLP
40 Westminster Street, Suite 1100
Providence, RI 02903
(401) 861-8217
tmcdermott@psh.com

18

2321403