UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| THICCC BOY PRODUCTIONS INC.,<br>    Plaintiff,<br><br>    v.<br><br>KYLE SWINDELLES, a/k/a YEW NEEK NESS,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 22-cv-00090-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Thiccc Boy Productions Inc., ("Thiccc Boy") sues the defendant, Kyle Swindelles, a/k/a Yew Neek Ness, ("Swindelles") alleging that Mr. Swindelles unfairly used Thiccc Boy's copyrighted material without consent. Mr. Swindelles proceeds pro se. Both parties move for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF Nos. 47 & 49.) Mr. Swindelles also moves for sanctions pursuant to Fed. R. Civ. P. 11. (ECF No. 60.)

I.     BACKGROUND

Thiccc Boy is a production company that produces *The Fighter and the Kid*, a podcast hosted by Brendan Schaub. The podcast, which is recorded in both video and audio format, focuses on current events in popular media and Mr. Schaub and his co-hosts' personal lives. The copyrighted materials in this case are videos of the podcast that Thiccc Boy published on YouTube.

Kyle Swindelles is a content creator who publishes videos on YouTube. Mr. Swindelles published many videos that included segments of Thiccc Boy's copyrighted work to his YouTube page. Thiccc Boy sues Mr. Swindelles—focusing solely on four videos Mr. Swindelles published which undisputedly include Thiccc Boy's copyrighted material—alleging four counts of copyright infringement. (ECF No. 1.) Mr. Swindelles contends that his use of the copyrighted material was fair and moves for sanctions based on Thiccc Boy's conduct during this litigation. (ECF Nos. 47 & 60.)

## II. SUMMARY JUDGMENT STANDARD

The parties move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000). The court views the facts at summary judgment "in the light most favorable to, and drawing all reasonable inferences in favor of, the

nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

## III. DISCUSSION

The Copyright Act encourages creativity by granting authors of original works "a bundle of exclusive rights." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985); *see* U.S. Const. art. I, § 8, cl. 8 ("The Congress shall have Power … To Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."). That bundle of exclusive rights includes the right to reproduce the copyrighted work and to create derivative works. 17 U.S.C. § 106. "Anyone who violates any exclusive right[] of the copyright owner as provided by [the Act] … is an infringer of the copyright." 17 U.S.C. § 501; *see also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").

It is undisputed that both of the traditional copyright infringement elements have been met in this case. (*See* ECF No. 49 at 7–9.) Mr. Swindelles contends, however, that his allegedly infringing use of the plaintiff's copyrighted material was fair. (ECF No. 47.)

Fair use is a judge-made doctrine that was subsequently codified in the Copyright Act. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021) ("The language of § 107, the fair use provision, reflects its judge-made origins."); *Folsom v.*

*Marsh*, 9 F. Cas. 342, 348 (No. 4,901) (CC Mass. 1841) ("The question, then, is, whether this is a justifiable use of the original materials, such as the law recognizes as no infringement of the copyright of the plaintiffs."). The doctrine limits the otherwise exclusive rights enjoyed by copyright holders. 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work ... is not an infringement of copyright."); *see also Monsarrat v. Newman*, 28 F.4th 314, 321 (1st Cir. 2022) (collecting cases). Fair use provides an affirmative defense for which its proponent bears the burden of proof. *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 590 (1994). Where the defense applies, the use of copyrighted material without the copyright holder's consent is permitted. *Soc'y of Holy Transfig. Monastery, Inc. v. Gregory*, 689 F.3d 29, 59 (1st Cir. 2012).

"Fair use is a mixed question of law and fact." *Harper & Row*, 471 U.S. at 560. However, although "[a]pplying a legal fair use conclusion may, of course, involve determination of subsidiary factual questions, such as whether there was harm to the actual or potential markets for the copyrighted work or how much of the copyrighted work was copied … the ultimate question [is] a legal question." *Oracle*, 141 S. Ct. at 1200; *see also Reyes v. Wyeth Pharms., Inc.*, 603 F. Supp. 2d 289, 296 (D.P.R. 2009) ("Although fair use, an affirmative defense, is a mixed question of law and fact, a district court may resolve issues of fair use at summary judgment where there is no genuine issue of material fact relevant to the fair use determination.").

To determine whether a use of copyrighted material without permission is fair, Congress has directed courts to consider four factors: (1) the purpose and character of the use, including whether the use is for commercial or nonprofit educational

4

purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. These factors are non-exclusive; courts must consider each fair use defense on a case-by-case basis weighing all of the factors and circumstances together in light of the purposes of copyright. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023) ("The Act's fair use provision, in turn, sets forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances."); *see also Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21 (1st Cir. 2000) (same).

### A. The Purpose and Character of the Use

The first fair use factor requires a determination of the purpose and character of the allegedly infringing use. 17 U.S.C. § 107. The central aim of this factor is "to see … whether [a] new work merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The inquiry under the first factor is known as the "transformative use test." *Id.*

Section 107 provides a non-exhaustive list of "the sorts of copying that courts and Congress most commonly have found to be transformative fair uses, including: 'criticism, comment, news reporting, teaching …, scholarship, [and] research.'" *Campbell*, 510 U.S. at 577–78 (quoting 17 U.S.C. § 107). Mr. Swindelles argues that

5

the allegedly infringing uses at issue in this case are transformative critiques or commentaries. Thiccc Boy argues that the works are not transformative because they "provide no commentary or criticism of Plaintiff's copyrighted works … [but rather] commentary on the content of those works." (ECF No. 51 at 9.)

It is well recognized that in order to qualify as commentary or criticism, a new work must have critical bearing on the copyrighted material itself, not merely the copyrighted material's subject or theme. *Warhol*, 598 U.S. at 542–44. In this case, however, where the allegedly infringing videos undisputedly commented on the quality of the discussion in the copyrighted works, the distinction Thiccc Boy draws is a distinction without a difference. (*See* ECF No. 50 at 4.)[1]

Because Mr. Swindelles' reaction videos used the copyrighted works to criticize or comment upon them rather than to supersede the works' original objects, the first fair use factor weighs in Mr. Swindelles' favor. *See, e.g., Warhol*, 598 U.S. at 545 (a use which "comments on, criticizes, or provides otherwise unavailable information about the original" is unlikely to supersede the original work); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 40 (S.D.N.Y. 2017) (a YouTube "reaction video" interspersed with segments of a copyrighted work in order to comment upon that work was a

---

[1] Beyond the distinction Thiccc Boy draws between criticizing the copyrighted work and criticizing its content, Thiccc Boy does not genuinely dispute that three of the four accused videos include criticism or commentary—however, it does contend that Mr. Swindelles "provides no commentary or criticism" in Reaction Video 2. (ECF No. 50 at 5.) Review of that video reveals that Mr. Swindelles provided comments throughout. (ECF No. 47, Ex. G.)

transformative fair use); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015) (same).

    B.    The Nature of the Copyrighted Work

The second statutory factor is the nature of the copyrighted work. 17 U.S.C. § 107. "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. 569 at 586; *see, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 455, n.40 (contrasting motion pictures with news broadcasts). The second factor requires courts "to consider two elements: (1) whether the [copyrighted works at issue] are factual or creative, and (2) whether the [works] have previously been published." *Soc'y of Holy Transfig.*, 689 F.3d at 61.

The works at issue in this case fall closer to the factual end of the copyright spectrum than the creative end. *See id.* at 62. The copyrighted videos, which essentially consist of three men in a recording studio with a few lounge chairs and microphones recording a podcast on current events in popular culture and their personal lives, and which are basically the contemporary analog to television talk show clips, and which include reactions to the copyrighted material of others, are more factual than creative. *See Nat'l Ass'n of Gov't Emps/Int'l Bhd. of Police Officers v. BUCI Tel., Inc.*, 118 F. Supp. 2d 126, 129 (D. Mass. 2000) (the use of a clip from a talk show without the copyright owner's consent was fair). The copyrighted works have also been published. 17 U.S.C. § 101 ("Publication is the distribution of copies

7

… of a work to the public."); *BUCI Tel.*, 118 F. Supp. 2d at 129 (a live video is published when it airs); (ECF No. 51 at 16) ("[T]he Original Works … have … been publicly performed.").

Because the copyrighted works at issue are published works that are more factual than creative, the second statutory fair use factor weighs in Mr. Swindelles' favor.

### C. The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The third statutory fair use factor is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. 17 U.S.C. § 107. The test "must be a flexible one, rather than a simple determination of the percentage used." *Núñez*, 235 F.3d at 24; *see also Harper & Row*, 471 U.S. at 565–67 (emphasizing the importance rather than the amount of material copied). The central focus of the inquiry is to determine whether "the extent of copying is consistent with or more than necessary to further the purpose and character of the use." *Núñez*, 235 F.3d at 24.

Here, Mr. Swindelles admittedly duplicated the copyrighted videos' full frames. (ECF No. 47 at 19.) However, to copy any less than the entire frame of each video would have disturbed the material and "made the [videos] useless to the [commentary]." *Id.* Courts have consistently held that even pure duplication can constitute fair use if it is "consistent with or [no] more than necessary to further the purpose and character of the use." *Id.* In this case, Mr. Swindelles' copying of the full frames was consistent with using the material for criticism or commentary.

8

In addition to duplicating the full frames of the copyrighted videos, Mr. Swindelles also borrowed several minutes of time from the copyrighted works. (*See* ECF No. 51 at 12–14.) Although Mr. Swindelles' use of the full frames was no more than necessary to further the purpose and character of the use, his use of a significant duration of the videos was not. All of the accused videos include segments of the copyrighted videos which Mr. Swindelles did not criticize or comment on. *See id.* Because Mr. Swindelles copied more of the material than necessary, the third factor weighs in Thiccc Boy's favor.

### D. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work

The final and most important statutory fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107; *see also Harper & Row*, 471 U.S. at 566 (The fourth factor is "undoubtedly the single most important element of fair use.").[2] Courts consider both the use at issue and "whether the unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. "A potential loss of revenue is not the whole story." *Oracle*, 141 S. Ct. at 1206. Courts must consider both the amount and source

---

[2] While the Supreme Court has recognized that the fourth statutory factor is the most important, this factor—like the other three—may still only be addressed through a "sensitive balancing of interests." *Sony*, 464 U.S. at 455, n.40. "Market harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors." *Campbell*, 510 U.S. at 591.

of a potential loss; and the loss "must [then be weighed against] … the public benefits the copying is likely to produce." *Id.*

When "copying damages a work's marketability by parodying it or criticizing it" the market for that work is not considered harmed under the Copyright Act. *Núñez*, 235 F.3d at 24. While criticism and commentary "may … kil[l] demand for the original … this kind of harm, even if directly translated into foregone dollars, is not cognizable under [the Act]." *Id.* What matters is whether an allegedly infringing use serves as a *substitute* for the copyrighted work in the original work's original and potential derivative markets. *Campbell*, 510 U.S. at 591 ("Indeed, as to [criticism,] pure and simple, it is more likely that the new work will not affect the market for the original in a way cognizable under this factor, that is, by acting as a substitute for it.").

Because Mr. Swindelles' videos function as criticism or commentary, it is "likely that the new work[s] will not affect the [original] market[s] for the original[s] in a way cognizable under [the fourth] factor." *Id.* Moreover, it is unlikely that the allegedly infringing uses will affect potential derivative markets. "The market for potential derivative uses includes only those markets that the creator of an original work would in general develop or license others to develop." *Id.* at 592. The Supreme Court has reasoned that "the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential … market." *Id.*

10

Since Mr. Swindelles' videos are unlikely to function as substitutes for the copyrighted videos in their original and potential derivative markets, the fourth fair use factor weighs in Mr. Swindelles' favor. *See Sony*, 464 U.S. at 450–51 ("But a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create. The prohibition of such … uses would merely inhibit access to ideas without any countervailing benefit.").

### E. Weighing the Factors and the Circumstances

Weighing the factors together with the instant circumstances, the Court concludes that Mr. Swindelles' use of the copyrighted material is fair. Three of the four statutory factors weigh in Mr. Swindelles' favor; and Mr. Swindelles' use of the copyrighted material serves a public benefit. *See Campbell*, 510 U.S. at 580 ("[C]riticism … can provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one."); *see also Penelope v. Brown*, 792 F. Supp. 132, 137 (D. Mass. 1992) ("Use that could have benefitted the public marginally is what is relevant.").

### F. Sanctions

Mr. Swindelles moves the Court to sanction Thiccc Boy for its conduct during this action. (ECF No. 60.) The crux of Mr. Swindelles' argument is that Thiccc Boy filed the case "to harass, silence, and intimidate [him] with expensive, prolonged litigation." *Id.* at 2. Mr. Swindelles points to evidence that Mr. Brendan Schaub, the principal executive of Thiccc Boy, boasted during a podcast recorded shortly before litigation began: "[I am] finally going after anyone who harasses [me] online,

11

including comics. [I] have spent half a million dollars on monster lawyers and [I] have friends in dark places who are going to get the job done." *Id.* at 3. Mr. Swindelles alleges that Thiccc Boy then coordinated with counsel to "ensure that this litigation would be as harassing and damaging as possible." *Id.*

When an attorney or unrepresented party presents a pleading, written motion, or other paper to the Court, she certifies that: (1) it is not being presented for any improper purpose; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or will likely have support after investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or are reasonably based on belief or lack of information. Fed. R. Civ. P. 11(b). The Court may impose an appropriate sanction if, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated. Fed. R. Civ. P. 11(c)(2) (motions for sanctions "must describe the specific conduct that allegedly violates Rule 11(b)"); 11(c)(3) (the court may order an attorney, law firm, or party to show cause why conduct specifically described in an order has not violated Rule 11(b) *sua sponte*).

Although the statements made by Mr. Schaub are troublesome—alone—they do not show that the purpose of this litigation was harassment when Thiccc Boy's claims potentially had merit. *See Unanue-Casal v. Unanue-Casal*, 898 F.2d 839, 847 (1st Cir. 1990) ("Since Rule 11 targets abuse ... the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a

dispute. Otherwise the existence of Rule 11 and its frequent application might have a chilling effect on many possibly meritorious claims."). The additional conduct Mr. Swindelles identifies to support his allegation that this action was "as harassing and damaging as possible" is conduct typical of our adversarial system. (*See* ECF No. 62.) Because Thiccc Boy did not violate Rule 11(b), Mr. Swindelles' Motion for Sanctions (ECF No. 60) is DENIED.

## IV.   CONCLUSION

Because Mr. Swindelles' use of the copyrighted material is fair, the plaintiff's Motion for Summary Judgment (ECF No. 49) is DENIED, and the defendant's Motion for Summary Judgment (ECF No. 47) is GRANTED. Because Thiccc Boy did not violate Fed. R. Civ. P. 11(b), Mr. Swindelles' Motion for Sanctions (ECF No. 60) is DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

February 22, 2024